**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: AFI HOLDING, INC.,
                              *Debtor,*

CHRISTOPHER R. BARCLAY,
Successor Trustee,
                              *Appellant,*

v.

KEITH MACKENZIE,
                              *Appellee.*

No. 06-55033

D.C. Nos.
CV-05-03232-PA
CV-05-04275-PA

In re: AFI HOLDING, INC.,
                              *Debtor,*

KEITH MACKENZIE
                              *Appellant,*

v.

CHRISTOPHER R. BARCLAY,
Successor Trustee,
                              *Appellee.*

No. 06-55070

D.C. No.
CV-05-03232-PA

OPINION

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted
February 12, 2008—Pasadena, California

Filed April 16, 2008

4079

Before: Stephen S. Trott, Richard R. Clifton, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Trott

**COUNSEL**

David R. Weinstein, Sharon Z. Weiss, Weinstein, Weiss & Ordubegian LLP, Los Angeles, California, for the appellant/cross-appellee.

Paul J. Laurin, Weiner & Laurin, LLP, Encino, California, for the appellee/cross-appellant.

**OPINION**

TROTT, Circuit Judge:

The bankruptcy court granted summary judgment in favor of the Trustee for Advance Finance Incorporated ("AFI"), avoiding transfers from AFI to Keith Mackenzie under CAL. CIV. CODE § 3439.04(a), and holding that the good faith exception to fraudulent transfers under CAL. CIV. CODE §3439.08(a) was barred as a matter of law because no "reasonably equivalent value" was exchanged for the transfers. The district court reversed and remanded, holding that the

good faith exception was not barred as a matter of law. We have jurisdiction pursuant to 28 U.S.C. § 158(d),[1] and we affirm.

# I

## BACKGROUND

Keith Mackenzie, like many others, invested funds in AFI. AFI was operated by Gary Eisenberg who entered a guilty plea to federal securities and mail fraud charges in 2002 and is currently serving a 63-month prison sentence. In that plea, he conceded that he operated AFI as a Ponzi scheme—paying investors purported profits with funds raised from other investors.

Mackenzie invested $73,400 with AFI in 1995 and 1996 as a purported limited partner. In connection with his subsequent withdrawal from AFI, he received payments totaling $89,824.18 between 1996 and 1997. Of the total payments, $73,400 was a return of Mackenzie's principal investment. The rest, roughly $16,424, was a fictitious gain on the principal investment.

AFI's bankruptcy proceedings commenced on October 22, 2001. In October of 2003, the Trustee, Carolyn A. Dye, commenced adversary proceedings against approximately 170 of AFI's investors, including Mackenzie, to avoid transfers made to them by AFI.[2] The Trustee claimed avoidance and recovery

---

[1]Although the district court's order remanded the case to the bankruptcy court for further factual findings, and thus was not final, we have jurisdiction to hear the appeal. The Ninth Circuit has taken a flexible approach to finality in the context of bankruptcy proceedings, and where, as here, the issues raised are legal in nature and a resolution could "dispose of the case or proceedings and obviate the need for fact finding," the court will retain jurisdiction in order to address the issues on appeal. *In re Emery*, 317 F.3d 1064, 1069 (9th Cir. 2003) (citation omitted).

[2]While the suit was pending in the district court, Carolyn Dye was removed as the trustee and replaced by successor trustee Christopher R. Barclay.

of fraudulent transfers pursuant to 11 U.S.C. §§ 544(b) and 550 and Cal. Civ. Code §§ 3439.04 and 3439.09.

The bankruptcy court granted the Trustee's summary judgment motion seeking to avoid transfers made by AFI to Mackenzie. Mackenzie appealed the judgment to the district court, which reversed in part. The reversal was limited to the amount of principal initially "invested" by Mackenzie. The district court reasoned that Mackenzie had exchanged his purported partnership interest for a proportionately reduced restitution claim, distinguishing the facts of the transaction from a simple receipt of money on account of an equity interest as a limited partner. The district court affirmed the bankruptcy court as to the remaining $16,424, the fictitious gain on Mackenzie's principal investment, as it was in excess of Mackenzie's restitution claim, and it was not transferred in connection with Mackenzie's withdrawal from the partnership.

The district court ordered the matter remanded to the bankruptcy court to determine whether Mackenzie had received the $73,400 transfer in good faith and to determine also how much, if any, prejudgment interest was payable to the Trustee.

The Trustee appeals, arguing that the debtor's estate is entitled to the entire amount transferred from AFI to Mackenzie, principal and the fictitious gain, as well as prejudgment interest. Mackenzie cross appeals, arguing that he is entitled to the entire amount transferred from AFI to him.

## II

## DISCUSSION

### A.  Standard of Review.

We review de novo the district court's decision on an appeal from a bankruptcy court. *In re Raintree Healthcare Corp.*, 431 F.3d 685, 687 (9th Cir. 2005). Thus, we apply the

same standard of review applied by the district court. *Id.* at 687. No deference is given to the district court's decision. *In re Salazar*, 430 F.3d 992, 994 (9th Cir. 2005). Summary judgment is to be granted if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, show that there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

## B.   This is a Fraudulent Transfer Case.

As an initial matter, it is important to recognize that this case implicates only fraudulent transfer law. Our concern here is not the law of preferences under 11 U.S.C. § 547, because we are years removed from that section's ninety-day reach back period. *See* 11 U.S.C. § 547(b)(4)(A). Similarly, we are not concerned with the law of subordination under 11 U.S.C. § 510(b), because we are a step removed from distribution of the bankruptcy estate under § 510(b).[3] *See Wyle v. C.H. Rider & Family (In re United Energy Corp.)*, 944 F.2d 589, 597 (9th Cir. 1991) ("United Energy"). Instead, this case is driven by California state fraudulent transfer law. As a result, our "analysis is directed at what the debtor surrendered and what the debtor received *irrespective of what any third party may have gained or lost*." *Id.* (emphasis added and internal quotation marks omitted).

---

[3]We find unsupported the Trustee's argument that the limited partnership interest should be subordinated because of the single unsecured creditor in this case. Although the Trustee represented to this court at oral argument that there are unsecured claims "at least in the low six figures," the record, and attempted augmentation of the record by the Trustee, fail to show evidence of any *unsecured* creditor beyond the one minimal unsecured creditor identified in the parties' briefs. Such argument and unsupported representation cause us to view this argument with doubt.

## C.  Applicable Law.

**[1]** An action to recover fraudulent transfers under 11 U.S.C. § 548(a)(1) of the Bankruptcy Code is time barred because the transfers from AFI to Mackenzie occurred more than one year before bankruptcy proceedings commenced.[4] Section 544(b) of the Bankruptcy Code, however, allows a bankruptcy trustee to avoid any transfer of a debtor's property that would be avoidable by an unsecured creditor under applicable state law. *See In re Acequia, Inc.*, 34 F.3d 800, 809 (9th Cir. 1994). One creditor of any amount will suffice for the purposes of § 544(b). *Id.* 809-10. In this case, at least one unsecured creditor existed, and Cal. Civ. Code §§ 3439.04(a) and 3439.08(a) provide California state law allowing an unsecured creditor to reach the transfers made by AFI to Mackenzie in 1996 and 1997.

**[2]** Where state statutes are similar to the Bankruptcy Code, cases analyzing the Bankruptcy Code provisions are persuasive authority. *Hayes v. Palm Seedlings Partners-A (In re Agric. Research and Tech. Group, Inc.)*, 916 F.2d 528, 534 (9th Cir. 1990) ("Agretech"). Here, California's fraudulent transfer statutes are similar in form and substance to the Bankruptcy Code's fraudulent transfer provisions. *United Energy*, 944 F.2d at 594. *Compare* 11 U.S.C. § 548(a)(1) *with* Cal. Civ. Code § 3439.04(a) (allowing a transfer to be avoided when the debtor acted with "actual intent to hinder, delay, or defraud" an entity or creditor, or where indicia of constructive fraud are present); *compare also* 11 U.S.C. § 548(c) *with* Cal. Civ. Code §3439.08(a) (providing a safe harbor/good faith exception to transferees who took in good faith and for value).

---

[4]The adversary proceeding from which this case arose was filed before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 199 Stat. 23. That Act extended the one-year period for avoidance of fraudulent transfers under the Code to two years.

**D.  Mackenzie's Cross-Appeal: The Transfer From AFI to Mackenzie was an Actually Fraudulent Transfer Under 548(a)(1)(A).**

Mackenzie argues that he may be entitled to the entire transfer, including the fictitious gain made on account of his "investment." The thrust of that argument is that genuine issues of material fact exist as to whether AFI transferred the $89,824.18 to Mackenzie with the "actual intent to hinder, delay, or defraud" an entity or creditor under § 548(a)(1)(A). We do not find that argument persuasive.

**[3]** We allow "a finding of fraudulent intent under section 548(a)(1) [the analog to §3439.04(a)] on the basis of circumstantial evidence." *Agretech*, 916 F.2d at 534. Furthermore, "the mere existence of a Ponzi scheme" is sufficient to establish actual intent under § 548(a)(1) or a state's equivalent to that section. *Id.* at 535. Here, Eisenberg's plea demonstrates the existence of fraudulent intent and a Ponzi scheme, and Mackenzie failed to identify evidence in the record that created a genuine issue of material fact as to either issue. Eisenberg admitted the following in his plea:

> Eisenberg solicited investors for partnerships knowing that the businesses of AFI, AFHI, and the partnerships were *not profitable from inception*. As early as 1996, Eisenberg knew that the factoring business of AFI, AFHI, and the partnerships had already incurred $4 million to $5 million in operating losses and *that he was running a ponzi scheme*, that is, paying investors purported interest payments with funds raised from other investors, rather than from the profits of the factoring business as Eisenberg represented to investors.

(emphasis added). Thus, the record shows Eisenberg's operation was a Ponzi scheme before Mackenzie "invested" in the partnership, well before the transfers were made from AFI to

Mackenzie. That by itself is enough to establish the transfers were made with actual fraudulent intent. *See Agretech*, 916 F.2d at 535.

**[4]** We find Mackenzie's cross-appeal without merit, and we continue to the issue in the Trustee's appeal: the application of the good faith exception under CAL. CIV. CODE §3439.08(a), which is the equivalent to 11 U.S.C. § 548(c).

## E.    The Good Faith Exception Under CAL. CIV. CODE §3439.08(a) is Not Barred as a Matter of Law.

We have twice addressed the application of the phrase "reasonably equivalent value" related to fraudulent transfer law in the context of a Ponzi scheme.[5] The first time was in *Agretech*, where we held that a distribution on account of a partnership interest relative to an investor's capital contribution was not "reasonably equivalent value" as defined by the Bankruptcy Code and Hawaii's analog. *Agretech*, 916 F.2d at 540. The second was in *United Energy*, where we held that a transfer in exchange for a proportionally reduced restitution claim was "reasonably equivalent value" as defined by the Bankruptcy Code and California's analog. *United Energy*, 944 F.2d at 596. The question before us today is whether the transfer from AFI to Mackenzie was a distribution under *Agretech*, or a transfer in exchange for a proportionally reduced restitution claim under *United Energy*. A recitation of the relevant facts of each case is appropriate.

---

[5]The Bankruptcy Appellate Panel ("BAP") has decided a sister case to the present case. *See Elite Pers., Inc. v. Barclay*, No. 05-1483 (9th Cir. BAP Oct. 16, 1998). The facts of that case are substantially similar to the facts of the case before this court. The only major differences are the names of the investors, and the amounts invested into the debtor's limited partnership. We have considered the disposition of that panel and disagree with its conclusion.

### 1. *Agretech*.

In *Agretech*, the debtor, Agretech, made a fraudulent transfer to one of its investors Palm Seedlings-A, ("Palm-A"). The bankruptcy trustee for Agretech brought an action against Palm-A, Palm-A's general partner, and Palm-A's limited partners to avoid transfers from the debtor to Palm-A pursuant to 11 U.S.C. § 544(b) and the applicable Hawaii state statutes. *Agretech*, 916 F.2d at 534. The district court found that Palm-A was a transferee in bad faith and avoided all of the transfers, ruling that the trustee could recover all monies from Palm-A and its limited partners. *Id.* at 531.

On appeal, we agreed with the district court. We concluded that Agretech transferred money to Palm-A by means of a Ponzi scheme, and as a result, HAW. REV. STAT. § 651C-4(a)(1), Hawaii's equivalent of 11 U.S.C. § 548(a)(1)(A), applied. *Id.* at 531. We then analyzed the good faith exception under HAW. REV. STAT. § 651C-8, Hawaii's equivalent of 11 U.S.C. § 548(c), and concluded also that the transferee, Palm-A, did not take in good faith. As a result, we held that the transfer of funds from Agretech to Palm-A was avoidable because the good faith exception did not apply. *Id.* at 539-40.

The funds, however, had been passed from Palm-A to Palm-A's limited partners *relative to their capital contributions*. In analyzing this subsequent transfer, we held that under 11 U.S.C. § 550(a)(1) and (2) and HAW. REV. STAT. § 651C-8 the trustee was permitted to recover the conveyed funds from the initial transferee and any subsequent transferees. We held further that the good faith exception did not apply because limited partnership interests are "equity securities" under 11 U.S.C. § 101(15)[6] and not "value," which is defined in the Code as securing or satisfaction of debt. *Id.* at 540.

---

[6]Since changed to 11 U.S.C. § 101(16).

At no time did we analyze the relationship between the limited partners and Palm-A, including any fraud that may or may not have taken place between the general partner and the limited partners. As a result, we addressed only "reasonably equivalent value" in terms of the "equity interest" created by the capital contributions made by the limited partners. We did not address any rescission or restitution rights held by the limited partners.

In the end, we allowed the Trustee to avoid the transfers to the limited partners because the transfers were merely a receipt of money on account of the limited partners' equity interests held because of their capital contributions.

## 2. *United Energy*.

In *United Energy*, United Energy Corporation ("UEC") manufactured and marketed solar modules to the public. From 1982 to 1985, UEC sold 5,323 modules to 4,500 purchasers for $30,000 to $40,000 each. Roughly one third of the purchase price was a down payment, and the remaining balance was paid in installments secured by the modules themselves. *United Energy*, 944 F.2d at 591.

At the time of each sale, purchasers were offered a contract called a "Power Purchase Agreement," to sell the electric and thermal power generated by the modules to Renewable Power Corporation ("RPC"). RPC was owned by the same individual as UEC. The modules only produced a negligible amount of power. However, to attract more purchasers, UEC and RPC made it appear that the business venture was a success. The two companies fabricated fictitious kilowatt hours of production for each module. RPC then paid module owners for the phony production. *Id.*

After bankruptcy proceedings commenced, the trustee for UEC and RPC filed adversary proceedings against many module purchasers seeking to avoid the fictitious power pay-

ments. In each of the adversary proceedings, partial summary judgment was granted by the bankruptcy court allowing the trustee to recover the power payments as fraudulent transfers under CAL. CIV. CODE § 3439.04, California's equivalent of 11 U.S.C. § 548(a)(1)(B). The bankruptcy court concluded as a matter of law that neither UEC nor RPC received reasonably equivalent value, or any value, in property or satisfaction of a present or antecedent debt, in exchange for the power payments paid to the module purchasers. *Id.* at 592.

The BAP consolidated the cases and reversed the bankruptcy court. *In re United Energy Corp.*, 102 B.R. 757 (9th Cir. BAP 1989). The BAP held that the power payments given to the defrauded investors would be deemed to partially satisfy or release fraud or restitution claims.

The trustee then appealed to this court. We noted, "the only issue for our determination, in connection with the fraudulent transfer question, is whether the investors gave reasonably equivalent value in exchange for the power payments they received." *United Energy*, 944 F.2d at 594-95. We then focused directly on the language of 11 U.S.C. § 548(d)(2)(A), which defines "value." *See id.* at 595.

We found that the investors were duped into buying modules, and because of that, they had claims for rescission and restitution which arose at the time of purchase. *Id.* at 596.

In the end, we did not allow the Trustee to avoid the transfers made on account of the power payments because the "investors exchanged reasonably equivalent value when their rights to restitution were proportionately reduced by the power payments they received." *Id.*

### 3. The Trustee's Arguments that *Agretech* Should Control Fail.

The Trustee uses *Agretech* as a springboard for two arguments. First, he argues that this case, like *Agretech*, is about

affirmative defenses to actually fraudulent transfers under Cal. Civ. Code § 3439.04(a)(1), not about establishing a prima facie claim for constructive fraud under § 3439.04(a)(2). Second, the Trustee argues that both *Agretech* and this case involve a limited partnership, which by definition is an "equity security" interest. Although both assertions are correct, neither persuade us that *Agretech* should control the outcome in this case. The Trustee's arguments are taken one at a time.

i) **The Distinction Drawn Between "Reasonably Equivalent Value" in the Context of an Affirmative Defense and in the Context of Establishing a Prima Facie Claim is a Distinction Without a Difference.**

The Trustee notes a distinction between *Agretech* and *United Energy*. He says that *Agretech* dealt with affirmative defenses to actually fraudulent transfers, whereas *United Energy* dealt with the prima facie case for constructively fraudulent transfers. He then argues that, because of the distinction, the case at bar, a case dealing with actually fraudulent transfers, should be decided under *Agretech*.

The distinction drawn, however, is of no significance. This is because in both analyses, a determination of "reasonably equivalent value" is necessary. In fact, it is *United Energy*, not *Agretech*, that provides the more complete reasonably equivalent value analysis for an initial transferee.

The Trustee argues also that "reasonably equivalent value" is irrelevant to § 3439.04(a)(1) given the following quoted language from *Agretech*:

> *United Energy* is distinguishable because the issue before that court concerned payment of an antecedent debt under 11 U.S.C. § 548(a)(2), the equivalent of Haw. Rev. Stat. §651C-4(a)(2). The present

issue, in contrast, concerns the avoidance of fraudulent transfers under Haw. Rev. Stat. 651C-4(a)(1), the equivalent of 11 U.S.C. §548(a)(1), where the entire transfer may be avoided, even if reasonably equivalent value was given . . . .

*Agretech*, 916 F.2d at 538. However, the Trustee does not provide the rest of the paragraph which reads, "so long as the transferor actually intended to hinder, delay or defraud its creditors and *the transferee accepted the transfer without good faith*." *Id.* (emphasis added).

[5] For a transfer to be avoided under § 3439.04(a)(2), the equivalent of § 548(a)(1)(B), a trustee must show that the "debtor made the transfer . . . without receiving *reasonably equivalent value* in exchange for the transfer." For a transfer to be avoided under § 3439.04(a)(1), the equivalent of § 548(a)(1)(A), a trustee does not have to show that the debtor received less than reasonably equivalent value. The transferee, however, may be entitled to keep the transfer if she can show she is "a person who took in good faith and for a *reasonably equivalent value* . . . ." Cal. Civ. Code § 3439.08 (emphasis added).

In *Agretech*, we properly refused to apply the "reasonably equivalent value" analysis in the prima facie case because the evidence showed actual intent to defraud under § 548(a)(1)(A). *Agretech*, 916 F.2d at 539-40. We then proceeded to the good faith defense, in which "reasonably equivalent value" analysis is proper. *Id.* at 539-40. However, we never reached the reasonably equivalent value analysis for the initial transfer because the initial transfer failed on the good faith prong of Hawaii's equivalent to § 548(c). *Id.*

[6] We find no reason, in statute or case law, to treat "reasonably equivalent value" differently for each of the Code's provisions. Both the prima facie case for constructively fraudulent transfers under § 3439.04(a)(2), and the affirmative

defense to actually fraudulent transfers under § 3439.08 require the determination of whether "reasonably equivalent value" was transferred from the transferee to the debtor.

> ii) **Although Limited Partnership Interests are Present in *Agretech* and In This Case, Mackenzie was Defrauded by Eisenberg, Creating Rights Different Than the Rights Held by the Limited Partners in *Agretech*.**

The first sentence of the "Limited Partners" section of our *Agretech* opinion says, "The monies which Palm Seedlings-A allegedly received as a fraudulent conveyance was transferred to its limited partners *in respect to their capital contributions.*" *Agretech*, 916 F.2d at 540. The three-paragraph section of that opinion dealing with the limited partnership issue operates from that premise. At no time did we discuss any fraud between Palm-A and the limited partners. *See id.* As a result, we never reached the question we answered in *United Energy*—whether a restitution claim qualified as "reasonably equivalent value." Instead, as noted above, the analytical fulcrum driving our decision in *Agretech* was the other prong of § 548(c)—whether the initial transferee took in good faith. *Id.* at 539-540.

Our discussion of "reasonably equivalent value" was only relevant in the initial transfer from Agretech to Palm-A in terms of measuring the good faith of Palm-A, the initial transferee. *Id.* at 539. As far as the secondary transfer, from Palm-A to the limited partners, we held that those "distributions were not for value *because Palm Seedlings-A made the distributions on account of the partnership interests and not on account of debt or property transferred to the partnership in exchange for the distribution.*" *Id.* at 540 (emphasis added).

Although *Agretech* and the case at bar both involve limited partnerships, the posture of the limited partners makes the cases distinguishable. The limited partners in the case at bar

were defrauded into their limited partnership role by the operator of the Ponzi scheme, creating rights different than the rights held by the limited partners in *Agretech*. The Trustee's argument that *Agretech* should control because both cases involve limited partners overly simplifies the cases and is not persuasive.[7]

### 4. *United Energy* Controls.

The district court correctly concluded that the good faith exception is not barred as a matter of law. In reversing the bankruptcy court, the district court held that Mackenzie "exchanged his partnership interest for a proportionately reduced restitution claim." Although we agree with the district court in its ultimate conclusion, we wish to clarify further because we recognize the potential effect this case will have on a number of other AFI fraudulent transfer cases.

The Trustee argues that the parties did not expressly *exchange* the restitution claim for the $89,824.18, and instead, AFI transferred the money on account of Mackenzie's partnership interest. Although circumstances of the exchange were cloaked in terms of a partnership interest, we delve beyond the "form" to the "substance" of the transaction. *See United Energy*, 944 F.2d at 596.

[7] As noted above, the record demonstrates that Eisenberg's operation was a Ponzi scheme before Mackenzie provided his principal "investment," and thus well before the transfers were made from AFI to Mackenzie. Because of this, Mackenzie acquired a restitution claim at the time he bought into Eisenberg's Ponzi scheme, just as the investors in *United*

---

[7] Evidence of the Trustee's oversimplification of the role the limited partnership interest plays in this case is evident in his citation to *In re Riverside-Linden Investment Co.*, 925 F.2d 320, 323 (9th Cir. 1991) (noting only that a *legitimate partnership interest* is not a claim contemplated by the bankruptcy code).

*Energy* acquired a restitution claim at the time they bought their solar modules. *Id.* at 596. It is this restitution claim, in toto, that Mackenzie exchanged when AFI returned Mackenzie's principal "investment" amount. If AFI had only provided Mackenzie a portion of his initial investment, as a fictitious gain or otherwise, Mackenzie would be entitled also to keep that amount as an exchange for a proportionate reduction in his restitution claim. *See id.*

Even if Mackenzie did not acquire a restitution claim at the time he bought into AFI, the unique facts of this case still provide us grounds to hold that he exchanged reasonably equivalent value for return of his principal "investment." Mackenzie was not being paid on account of an equity position as were the investors in *Agretech*. Instead, he was *ending* his interest in the so-called partnership, creating something more than a simple equity payment in proportion to a capital contribution. Either way we skin this cat, *Agretech* is distinguishable, and *United Energy* is the more appropriate precedent.

As a result, the district court was correct to determine that the good faith exception is not barred as a matter of law. If, on remand, the bankruptcy court concludes that Mackenzie took the transfer in good faith, Mackenzie is entitled only to the amount he initially provided to AFI. *United Energy*, 944 F.2d at 595 n.6. The fictitious gain, however, amounting to $16,424.18, is in excess of his restitution claim, and was not returned on account of his withdrawal from the partnership. Therefore the district court was correct to find that the Trustee was entitled to have that amount avoided.

## E. Prejudgment Interest.

We agree with the district court, and conclude that any discussion of the bankruptcy court's discretion to award prejudgment interest is premature. We therefore decline to address that part of the Trustee's appeal. That issue is left for the

bankruptcy court once the application of the good faith exception has been adjudicated.

## III

## CONCLUSION

**[8]** Mackenzie's cross-appeal argument that AFI's transfers were not actually fraudulent fail because Eisenberg's declaration, coupled with our treatment of Ponzi schemes in the context of fraudulent transfers, dictates to the contrary. Furthermore, the district court was correct to conclude that the good faith exception to actually fraudulent transfers is not barred as a matter of law because Mackenzie's right to rescission and restitution were "reasonably equivalent value" as described by *United Energy*.

**AFFIRMED** and **REMANDED**.