[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10683

_____

Bkcy. No. 09-00601-PWB

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 27, 2011
JOHN LEY
CLERK

WILLIAM F. PERKINS,

Plaintiff-Appellant,

versus

AENA Y. HAINES,
JAMES BRONNER,
SIMONE BRONNER,
NATHANIEL BRONNER,
GEORGE RUSSELL CURTIS, SR.,
et al.,

Defendants-Appellees.

_____

Appeal from the United States Bankruptcy Court
for the Northern District of Georia

_____

(October 27, 2011)

Before EDMONDSON and MARTIN, Circuit Judges, and HODGES,* District
Judge.

_____

*Honorable Wm. Terrell Hodges, U. S. District Judge for the Middle District of Florida,
sitting by designation

HODGES, District Judge.

International Management Associates, LLC, and several related entities (the "Debtors") were operated as the instruments of a Ponzi scheme.[1] A receiver ultimately filed voluntary petitions in the bankruptcy court seeking relief for each of the Debtors under Chapter 11 of the Bankruptcy Code. A consolidated plan of liquidation was approved and William F. Perkins was appointed as Plan Trustee. The Trustee then instituted a number of adversary proceedings in the bankruptcy court seeking to avoid and to recover distributions that had been made to the investors in the Debtors. The Trustee claimed that transfers to the investors prior to the collapse of the Ponzi scheme were "fraudulent transfers" under 11 U.S.C. § 548(a)(1)(A) and applicable state law. The investors asserted an affirmative defense under 11 U.S.C. § 548(c), claiming that the transfers were "for value." The Trustee moved for partial summary judgment. The bankruptcy court denied the motion, effectively upholding the availability of the investors' affirmative defense.

---

[1] The essence of a Ponzi scheme is to use newly invested money to pay off old investors and convince them that they are earning profits rather than losing their shirts. United States v. Orton, 73 F.3d 331, 332, n. 2 (11th Cir. 1996) (internal quotations omitted).

The Trustee filed this appeal.[2]  It presents an issue of first impression in this Circuit.  We affirm.

## I.

Kirk Wright formed the Debtors purportedly to manage and operate them as hedge funds, each of which was structured either as a limited liability company or a limited partnership.   In reality, Wright used the Debtors to operate a fraudulent Ponzi scheme whereby capital contributions made to the Debtors by later equity investors were used to repay earlier investors more than their investments were actually worth, as well as fictitious profits.[3]  This was done to perpetuate the illusion that the Debtors had positive investment gains, to keep existing investors

[2]For interlocutory orders, the court of appeals has appellate jurisdiction in a bankruptcy case when the bankruptcy court (or the district court on review) certifies that: (1) an order entered in the case involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court, or if it involves a matter of public importance; (2) the order involves a question of law that requires resolution of conflicting decisions; or (3) an immediate appeal from the order may materially advance the progress of the case or proceeding. See 28 U.S.C. § 158(d)(2)(A); In re Barrett, 543 F.3d 1239, 1241 (11th Cir. 2008).  The bankruptcy court certified that (1) and (3) are present and we accepted the appeal.

We will review the Bankruptcy Court's conclusions of law de novo.  Barrett, 543 F.3d at 1241; Green Tree Acceptance, Inc. v. Calvert (In re Calvert), 907 F.2d 1069, 1071 (11th Cir. 1990).  See also Gray v. Manklow (In re Optical Techs., Inc.), 246 F.3d 1332, 1334 (11th Cir. 2001) ("an appellate court reviews a bankruptcy court's grant of summary judgment de novo").

[3]The bankruptcy court, as urged by the parties, assumed these facts for purposes of deciding the Trustee's motion for partial summary judgment.  The court expressly noted that it was not determining any other issues, claims, or defenses.  The parties agree that these facts can be assumed for this appeal as well.  This Court's acceptance of that assumption should not be interpreted as a ruling on any factual or legal matter other than the "for value" issue of law:  the sole issue argued and before us.

from seeking recovery of their equity investments, and to induce prospective investors to make new equity investments.

Each of the investor defendants made a capital contribution through execution of a limited liability company agreement, a limited partnership agreement, and/or a subscription agreement with one or more of the Debtors such that each investor defendant held an equity interest in one or more of the Debtors, denominated as a membership unit or limited partnership interest. At some point during the operation of the Ponzi scheme, each investor defendant received one or more transfers of property from one or more of the Debtors, representing returns of principal and/or purported profits on their equity investments.

## II.

With respect to Ponzi schemes, transfers made in furtherance of the scheme are presumed to have been made with the intent to defraud for purposes of recovering the payments under §§ 548(a) and 544(b). See In re AFI Holding, Inc., 525 F.3d 700, 704 (9th Cir. 2008); Conroy v. Shott, 363 F.2d 90, 92 (6th Cir. 1966). See also Cuthill v. Greenmark (In re World Vision Entertainment, Inc.), 275 B.R. 641, 656 (Bankr. M.D. Fla. 2002). For purposes of this appeal, as in the bankruptcy court, it is presumed that all of the Debtors' transfers to the investor defendants qualify as fraudulent transfers under § 548(a)(1)(A) and applicable state law.

However, § 548(c) provides a transferee with an affirmative defense where the transferee acts in good faith and "[gives] value to the debtor in exchange for such transfer . . . ." The term "value" is defined to include "satisfaction or securing of a present or antecedent debt of the debtor." 11 U.S.C. § 548(d)(2)(A). Although antecedent debt is not defined, the term "debt" is stated to include "liability on a claim," 11 U.S.C. § 101(12), and "claim" is broadly defined as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5).[4]

In the case of Ponzi schemes, the general rule is that a defrauded investor gives "value" to the Debtor in exchange for a return of the principal amount of the investment, but not as to any payments in excess of principal. See e.g., Donnell v. Kowell, 533 F.3d 762, 770 (9th Cir. 2008); Scholes v. Lehmann, 56 F.3d 750, 757-58 (7th Cir. 1995). Courts have recognized that defrauded investors have a claim for fraud against the debtor arising as of the time of the initial investment. Jobin v. McKay (In re M & L Business Mach. Co., Inc.), 84 F.3d 1330, 1340-42 (8th Cir. 1996); Wyle v. Rider (In re United Energy Corp.), 944 F.2d 589, 596 (9th Cir. 1991). Thus, any transfer up to the amount of the principal investment

---

[4]The Parties agree that the state law definition of "claim" and "debt" tracks the definitions set forth in 11 U.S.C. § 101.

5

satisfies the investors' fraud claim (an antecedent debt) and is made for "value" in the form of the investor's surrender of his or her tort claim. Such payments are not subject to recovery by the debtor's trustee. Donnell v. Kowell, 533 F.3d 762, 772 (9th Cir. 2008); In re M & L Business Mach. Co., 84 F.3d at 1342; In re United Energy, 944 F.2d at 596, Eby v. Ashley, 1 F.2d 971 (4th Cir. 1924). Any transfers over and above the amount of the principal – *i.e.*, for fictitious profits – are not made for "value" because they exceed the scope of the investors' fraud claim and may be subject to recovery by a plan trustee. Sender v. Buchanan (In re Hedged-Investments, Assoc., Inc.), 84 F.3d 1286, 1290 (10th Cir. 1996); In re United Energy, 944 F.2d at 595, n. 6.

With the exception of AFI Holding, all of the decisions previously cited address circumstances in which the defrauded investors held claims against the instrument of the fraudulent scheme either in tort law or through some sort of contractual arrangement. They do not explicitly reach the present case in which the investors held an equity interest in the insolvent debtors. For that reason, the Trustee urges the court to reject AFI Holding, and argues that the general rule should not apply in this case. His theory is that the payments to the investors operated to redeem their equity interests and were not made in satisfaction of a debt.

6

The Trustee hangs his hat on a line of cases holding that transfers to redeem an equity investment in an insolvent entity (initially made free of fraud) cannot constitute a transfer "for value." See e.g., Consove v. Cohen (In re Roco Corp.), 701 F.2d 978, 982 (1st Cir. 1983); Schafer v. Hammond, 456 F.2d 15, 17-18 (10th Cir. 1972); Lytle v. Andrews, 34 F.2d 252 (8th Cir. 1929); M.V. Moore & Co. v. Gilmore, 216 F. 99, 100-01 (4th Cir. 1914). In each of these decisions, investors exchanged shares of stock for other security interests, notes, or real property, all at a time when the corporations were insolvent. The courts held that the exchanges constituted fraudulent transfers because the stock returned to the corporations as part of the exchange was, at that time, virtually worthless due to the corporate insolvency. As such, the corporations received "less than a reasonably equivalent value." See Roco Corp., 701 F.2d at 982; Schafer, 456 F.2d at 16-18; Lytle, 34 F.2d at 253-54.

The Trustee contends that these decisions should apply here because the Debtors were all insolvent at the time the transfers to the investor defendants were made, and any such transfers served only to redeem their worthless equity interests. We disagree, and find the argument to be unpersuasive for the simple reason that none of these decisions involved Ponzi schemes. Stated differently, none of the stockholders in those cases were fraudulently induced into making their initial investments so that none possessed fraud claims that would be

7

satisfied in whole or in part by virtue of the later transfers. Each case involved a situation in which an insolvent corporation attempted to pay off its shareholders at the expense of creditors, without receiving any value in return and with no regard for satisfying any possible antecedent debts. While we agree with the reasoning of Roco Corp., Schafer, Lytle, Gilmore and their progeny, these decisions are simply not relevant to the present case.

In sum, the Trustee asks the court to focus solely on the form of the investment to the exclusion of all other factors, and to ignore the realities of how Ponzi schemes operate. As the bankruptcy court correctly noted, however, no court to date has applied this form over substance rule in fraudulent transfer actions involving Ponzi schemes. More specifically, no court has distinguished between equity investments and debt-based claims when applying the general rule to fraudulent transfer actions arising out of a Ponzi scheme. To the contrary, the Ninth Circuit – the only court of appeals to address this issue to date – applied the general rule to equity investors in a Ponzi scheme, and rejected any attempts to distinguish between the forms of the investment. AFI Holding, 525 F.3d at 708-09.

The debtor in AFI Holding operated a Ponzi scheme through which investors purchased equity interests in various limited partnerships. One of the investors, Keith McKenzie, received payments during the operation of the scheme

8

consisting of a return of his $73,400 limited partnership investment, and $16,424 in fictitious profits. 525 F.3d at 702. During the bankruptcy proceeding, the plan trustee sought to avoid the transfers to McKenzie as fraudulent transfers under §544(b) and California law. The bankruptcy court found that the transfers were not "for value" and granted the plan trustee's motion for summary judgment. The district court reversed in part, finding that the transfers up to the principal amount of McKenzie's investment were "for value" because they were received in satisfaction of McKenzie's restitution claim. The district court then remanded to the bankruptcy court to determine whether the transfers had been made in good faith. Id.

The Ninth Circuit affirmed. The court emphasized that the limited partners in AFI Holding "were defrauded into their limited partnership role by the operator of the Ponzi scheme." 525 F.3d at 708. The AFI debtors operated the Ponzi scheme before McKenzie made his principal investment, and the Ponzi scheme continued to exist well before any transfers were made back to him. Accordingly, McKenzie "acquired a restitution claim at the time he bought into [the] Ponzi scheme, . . . [and] [i]t is this restitution claim, in toto, that McKenzie exchanged when AFI returned McKenzie's principal 'investment' amount." 525 F.3d at 708. "Although circumstances of the exchange were cloaked in terms of a partnership interest, [we have looked] beyond the 'form' to the 'substance' of the transaction."

9

<u>Id.</u> Whether the debtor was insolvent at the time was irrelevant. The fact that McKenzie and the other investors held equity interests was also of no moment. The general rule applies in a Ponzi scheme setting regardless of whether good faith investors have an equity interest in, or some other form of claim against, the legal entity constituting the instrument of the fraud. We agree with that analysis and the result.

Virtually identical facts are presented in this case. The Trustee agrees that the investor defendants purchased limited partnerships from the Debtors at a time when the Ponzi scheme was already in operation and a claim for fraud or restitution was created in favor of the investors based on the Debtors' fraudulent activity. Under <u>AFI Holding</u> and the general rule, later transfers from the Debtors up to the amount of the investment satisfied the investor defendants' restitution or fraud claims and provided value to the Debtors.

The bankruptcy court's denial of the Trustee's motion for partial summary judgment is AFFIRMED.