**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-1935**

_____

HARRIS JASON GOLD, Liquidating Trustee,

Plaintiff – Appellant,

v.

GATEWAY BANK, FSB,

Defendant – Appellee.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.   Anthony J. Trenga, District Judge. (1:12-cv-00264-AJT-IDD; 08-13293-RGM; 10-01510-RGM)

_____

Argued:  May 15, 2013                 Decided:  June 3, 2013

_____

Before WILKINSON, MOTZ, and SHEDD, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Shedd wrote the opinion, in which Judge Wilkinson and Judge Motz joined.

_____

**ARGUED:**  Kenneth Oestreicher, WHITEFORD, TAYLOR & PRESTON, LLP, Baltimore, Maryland, for Appellant.  James Robert Schroll, BEAN, KINNEY & KORMAN, PC, Arlington, Virginia, for Appellee.  **ON BRIEF:**  Kevin G. Hroblak, WHITEFORD, TAYLOR & PRESTON, LLP, Baltimore, Maryland; Christopher A. Jones, Bradford F. Englander, WHITEFORD, TAYLOR & PRESTON, LLP, Falls Church, Virginia, for Appellant.  Heidi Meinzer, BEAN, KINNEY & KORMAN, P.C., Arlington, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

H. Jason Gold is the liquidating trustee of the bankruptcy estate of Vijay K. Taneja and Financial Mortgage, Inc. ("FMI").[1] Gold filed this action in bankruptcy court against Gateway Bank, FSB, seeking to avoid monetary transfers FMI made to Gateway, claiming they were fraudulent conveyances. Following trial, the bankruptcy court dismissed Gold's action, and the district court affirmed that decision. Gold now appeals, arguing that the bankruptcy court erred in determining that Gateway met its burden to establish the good-faith affirmative defense under 11 U.S.C. § 548(c) regarding three transfers FMI made to Gateway on December 11, 2007 (the "Xu transfers"). Specifically, Gold contends that the bankruptcy court erred by finding that Gateway did not have actual knowledge or inquiry notice of FMI's fraudulent purpose in making those transfers when Gateway received the payments. In light of this asserted error, Gold further contends that the district court erred in affirming the bankruptcy court's order. We affirm.

We review the legal conclusions of both the district court and the bankruptcy court de novo, and (like the district court)

---

[1] Taneja used FMI, a mortgage loan originator, to perpetrate a massive Ponzi scheme involving mortgage loans. See In re Taneja, 453 B.R. 618, 620 (Bkrtcy., E.D. Va. 2011) (generally describing the fraudulent scheme).

we review the factual findings of the bankruptcy court for clear error. In re Nieves, 648 F.3d 232, 237 (4th Cir. 2011). Section 548 of the Bankruptcy Code "sets forth the powers of a trustee in bankruptcy . . . to avoid fraudulent transfers," and it permits a trustee to attempt to set aside "not only transfers infected by actual fraud but certain other transfers as well — so-called constructively fraudulent transfers." BFP v. R.T.C., 511 U.S. 531, 535 (1994). However, § 548(c) "provides a transferee with an affirmative defense where the transferee acts in good faith and gives value to the debtor in exchange for such transfer." Perkins v. Haines, 661 F.3d 623, 626 (11th Cir. 2011) (internal punctuation altered).[2] A finding of good faith under § 548(c) is primarily a factual determination subject to clear-error review. In re Armstrong, 285 F.3d 1092, 1096 (8th Cir. 2002). Under the clear-error standard, we will not reverse a bankruptcy court's factual finding "that has support in the evidence unless that finding is clearly wrong." In re ESA Environmental Specialists, Inc., 709 F.3d 388, 399 (4th Cir. 2013).

---

[2] Section 548(c) provides: "[A] transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation." The "for value" prong of § 548(c) is not at issue.

In reviewing Gold's challenge to the bankruptcy court's good-faith finding, the district court explained:

> The bankruptcy court determined, based on the testimony presented, that Gateway bank had met its burden of proving that, with respect to its handling of the three Xu transfers, it followed its own routine business practices, which were within the industry standard. The bankruptcy court indicated that in arriving at this determination, [it] gave "more weight to the bank's expert than the Trustee's expert," finding the bank's expert [Cisneros] "better qualified" and finding "the inferences that [Cisneros] drew from the information that he had were more plausible." The bankruptcy court also determined that the testimony and evidence before him did not support a finding that Gateway Bank had actual notice of fraud when it accepted the transfers from FMI.

J.A. 1521-22. Although there is, perhaps, evidence in the record to suggest a contrary finding,[3] our review of the parties' arguments, the applicable law, and the record before us leads us to agree with the district court that the bankruptcy court's finding of good faith is not "clearly wrong."

Accordingly, we affirm the judgment of the district court.

AFFIRMED

---

[3] Gold attaches much significance to the January 11, 2008, email, in which Gateway employee Michael Kenny referred to the Xu transfers as being "bogus," arguing that this statement establishes that Gateway knew of FMI's fraudulent intent on December 11, 2007, the date of those transfers. The bankruptcy court carefully considered, and ultimately rejected, this argument. See J.A. 1456-58. We find that the bankruptcy court's analysis regarding the email is not unreasonable.