FILED

MAR 9 2020

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

In re:

LEILANI HOPE RICKERT,

               Debtor.

LEILANI HOPE RICKERT, FKA Leilani
Hope McConnell,

               Appellant,

v.

SPECIALIZED LOAN SERVICING LLC,

               Appellee.

BAP No. MT-19-1120-LBG

Bk. No. 2:18-bk-60937-BPH

**MEMORANDUM**<sup>*</sup>

Argued and Submitted on February 27, 2020
at Pasadena, California

Filed – March 9, 2020

Appeal from the United States Bankruptcy Court
for the District of Montana

---

    <sup>*</sup>This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Benjamin P. Hursh, Chief Bankruptcy Judge, Presiding

—————

Appearances: Appellant argued pro se; Benjamin J. Mann of Halliday, Watkins & Mann, P.C. argued for Appellee.

—————

Before: LAFFERTY, BRAND, and GAN, Bankruptcy Judges.

## INTRODUCTION

Chapter 13[1] debtor Leilani Hope Rickert ("Debtor") appeals the bankruptcy court's order: (1) overruling her objection to Appellee Specialized Loan Servicing LLC's ("SLS") proof of claim; and (2) granting SLS's motion to modify the automatic stay. In support of its proof of claim and its motion to modify the stay, SLS attached a copy of the original promissory note in favor of SunTrust Mortgage, Inc. ("SunTrust"), signed by Debtor and indorsed in blank, and copies of the pertinent deed of trust and assignments showing that SLS was the assignee of the original deed of trust encumbering Debtor's residence in Hardin, Montana (the "Property").

Despite this documentation, Debtor argued that SLS lacked standing as the real party in interest entitled to file a claim and move to modify the stay. She contended that, despite repeated requests, SLS had not

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

2

"validated" the loan by supplying her with either the original note or an "authenticated and notarized or certified copy" of the loan documents. At an evidentiary hearing, an SLS representative testified that she was in physical possession of the original promissory note and that SLS was acting as the creditor, servicer, and custodian of the note. Based on this unrefuted evidence, the court found that SLS was the real party in interest entitled to enforce the note and deed of trust. Accordingly, it overruled Debtor's objection to SLS's claim and granted SLS's motion to modify the stay. We AFFIRM.

## FACTUAL BACKGROUND

In 2014, Debtor executed a note in the principal amount of $58,850.00 in favor of SunTrust. The note is secured by a deed of trust on the Property. The deed of trust names Mortgage Electronic Registration Systems, Inc. ("MERS"), solely as nominee for SunTrust, as the original beneficiary under the deed of trust. MERS executed an assignment of deed of trust to SunTrust in November 2016. A few months later, SunTrust executed an assignment of deed of trust to SLS. The original deed of trust and both assignments were recorded in Big Horn County, Montana.

Debtor fell behind on the note payments. After she received a notice of default from SLS in July 2017, she wrote to SLS requesting "validation" of the debt. In its letter in response, a representative of SLS explained that it was the current servicer of her mortgage loan. The letter also stated that

SunTrust was the original creditor and Federal Home Loan Mortgage Corporation ("Freddie Mac") was the current creditor. The letter indicated that copies of the note, deed of trust, notice of servicing transfer, and payment history were enclosed. Debtor also apparently contacted SunTrust for clarification and received a responsive letter in September 2017, in which a SunTrust representative informed her that the original loan terms remained valid and enforceable. The SunTrust letter indicated that copies of the original note and the notification letter informing Debtor that SLS was the servicer were enclosed. Despite these responses, Debtor continued to send letters to SLS, SunTrust, and Freddie Mac, which she characterized as Qualified Written Requests under the Real Estate Settlement Procedures Act ("RESPA") and which contained voluminous requests for information and documentation.

Debtor filed for chapter 13 relief in October 2018. She listed on her schedules a fee simple interest in the Property, valued at $120,000. She did not list any secured creditors on Schedule D but included SLS as a nonpriority unsecured creditor, identified as a "debt collector for loan," with a claim of $13,797.11. Debtor filed a number of proposed chapter 13 plans, none of which were confirmed by the bankruptcy court. At a hearing in late November 2018, the court denied confirmation but gave Debtor an opportunity to file another amended plan.

In December 2018, SLS filed its proof of claim asserting a secured

claim of $59,681.28, including an arrearage of $13,797.11.[2] SLS attached to its proof of claim copies of all pertinent loan documents, including the promissory note indorsed in blank, the deed of trust, and the assignments of the deed of trust.

Debtor's amended chapter 13 plan dated December 20, 2018, listed Wells Fargo Bank, N.A., as a secured creditor holding an arrearage claim of $13,797.11. At the continued confirmation hearing held in early January 2019, the chapter 13 trustee, Robert G. Drummond ("Trustee"), objected to the December 20 plan because it provided for payment to the wrong creditor. This appeared to be the only deficiency in the proposed plan, and the court gave Debtor "one last chance to get it right." Hr'g Tr. (Jan. 4, 2019) at 11:9-10.

SLS subsequently filed a Motion to Modify Stay based on Debtor's failure to make any post-petition payments on the loan. Debtor filed an opposition, alleging, among other things, that SLS lacked legal authority to move for relief from the stay. Debtor also filed an objection to SLS's claim in which she contended that SLS was not a party in interest because SunTrust and MERS had sold their alleged rights. Debtor also filed a Motion to Compel SLS to Produce Documents, i.e., responses to her RESPA requests.

---

[2]SLS later amended its proof of claim to reflect an arrearage of $15,344.96, which increased the total claim to $61,229.13.

At the hearing on the Motion to Modify Stay and Motion to Compel, the bankruptcy court permitted Debtor to testify under oath. During that testimony, the bankruptcy court reviewed SLS's proof of claim with her. Debtor admitted that the note and deed of trust contained her signatures. She also acknowledged that the most recent assignment of the deed of trust named SLS as the assignee. She then stated that SLS had not responded to her RESPA requests and argued that she never signed a note or contract with SLS and that the assignment from MERS to SunTrust was "fraudulent" because the MERS Procedures Manual states that MERS cannot transfer the beneficial rights to a debt.

The bankruptcy court then asked Debtor whether the issues could be resolved if she had the opportunity to question a witness from SLS. She replied, "If we have the hearing and I can present my case and question the witness and have–present my documents, yes." Hr'g Tr. (Feb. 12, 2019) at 45:16-18. Debtor also agreed to SLS's witness and counsel appearing by video. With that, the court continued the hearing to April 11, 2019, at which time the court would also consider Debtor's objection to SLS's claim.

At the April 11 hearing, attorney Clarence Belue appeared on Debtor's behalf on a limited basis solely with respect to the claim objection. SLS's witness, Laura Ollier, a second assistant vice president in the default litigation department at SLS, appeared by video as previously agreed. Ms. Ollier testified that she had in her physical possession the note dated

March 26, 2014 that Debtor had signed. Ms. Ollier also testified that (1) SunTrust was the original lender, (2) the note, which was indorsed in blank, had been transferred to SLS for servicing in May 2017, and (3) SLS is the creditor, servicer and custodian of the note. After Ms. Ollier's testimony, Mr. Belue moved for a directed verdict, which the court denied.

Debtor then testified. She again admitted under oath that she had signed the March 26, 2014 note in favor of SunTrust. She also testified that she had received notice in May 2017 that SLS was servicing the loan and that she was to make payments to them at the address they gave her. At the conclusion of the hearing, Mr. Belue moved to retract Debtor's agreement that SLS's witness could appear by video, which the court denied. The court then denied on the record Debtor's motion to compel SLS to produce documents on the ground that the evidentiary hearing had resolved the issues, and it took Debtor's claim objection and SLS's motion to modify the stay under advisement.

On April 29, 2019, the bankruptcy court issued a memorandum of decision and an order (1) overruling Debtor's objection to SLS's claim; and (2) granting SLS's motion to modify stay.[3] Debtor timely appealed.

---

[3]The order also: (1) denied Debtor's April 22, 2019 motion to admit additional evidence; (2) denied Debtor's two Motions to Strike Proof of Claim No. 5 filed April 10 and April 26, 2019, respectively; (3) denied Debtor's motions to compel filed January 31, 2019, and April 8, 2019; and (4) denied confirmation of Debtor's December 21, 2018 chapter 13 plan and set a hearing on her amended plan filed April 9, 2019. Only the

(continued...)

7

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1) and (b)(2)(B) and (G). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy court erred in overruling Debtor's objection to SLS's proof of claim.

Whether the bankruptcy court abused its discretion in granting SLS's motion to modify the stay.

## STANDARDS OF REVIEW

"An order overruling a claim objection can raise legal issues (such as the proper construction of statutes and rules) which we review de novo, as well as factual issues (such as whether the facts establish compliance with particular statutes or rules), which we review for clear error." *Veal v. Am. Home Mortg. Serv. Inc. (In re Veal)*, 450 B.R. 897, 918 (9th Cir. BAP 2011) (citations omitted). Standing is a legal issue that we review de novo. *Id.* at 906. De novo review is independent, with no deference given to the trial court's conclusion. *Barclay v. Mackenzie (In re AFI Holding, Inc.)*, 525 F.3d 700, 702 (9th Cir. 2008). Review under the clearly erroneous standard is significantly deferential, requiring a "definite and firm conviction that a

---

[3](...continued)
granting of SLS's motion to modify and the overruling of Debtor's objection to SLS's claim are at issue in this appeal.

8

mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001).

A bankruptcy court's determinations regarding stay relief are reviewed for an abuse of discretion. *In re Veal*, 450 B.R. at 915. Under the abuse of discretion standard, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). If the bankruptcy court identified the correct legal rule, we then determine under the clearly erroneous standard whether its factual findings and its application of the facts to the relevant law were: "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (internal quotation marks omitted).

### DISCUSSION

### A. The bankruptcy court did not err in overruling Debtor's objection to SLS's claim.

SLS's proof of claim was executed by an authorized agent of SLS and attached copies of the relevant promissory note, recorded deed of trust and assignments, a statement of the amounts owing, and the amount necessary to cure default, as required under Rule 3001. Such a proof of claim constitutes "prima facie evidence of the validity and amount of the claim." Rule 3001(f). To defeat a prima facie valid claim under § 502, "the objector must come forward with sufficient evidence and 'show facts tending to

defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves.'" *Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1039 (9th Cir. 2000) (quoting *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir.1991)).

Debtor  objected to SLS's proof of claim on the ground that SLS is not the real party in interest entitled to enforce the note. She alleged in her objection that SLS had not produced either the original or a certified copy of the note despite numerous requests. She has also argued at various times that either SunTrust or Freddie Mac is the holder of the note and that she has no contractual relationship with SLS, which is a debt collector only.

This Panel has held that a party has standing to prosecute a proof of claim involving a negotiable promissory note secured by real property if, under applicable law, it is a "person entitled to enforce the note" as defined by the Uniform Commercial Code ("UCC"). *In re Veal*, 450 B.R. at 902. In Montana, the "person entitled to enforce" is:

> the holder of an instrument, a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument pursuant to 30-3-309. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

Mont. Code Ann. § 30-3-301.

Here, the bankruptcy court found that the note is a negotiable

instrument that was indorsed in blank by SunTrust. Thus, under Montana law, the bearer of the note–here, SLS–is entitled to enforce it. Additionally, the court found that the recorded assignments of the deed of trust showed that SLS was the assignee and could thus enforce the deed of trust. *See Hofman v. HSBC Bank USA, NA (In re Hofman)*, 488 B.R. 157, 166 (Bankr. D. Mont. 2013); Mont. Code Ann. § 71-1-110.[4] Noting that Debtor had failed to produce any contrary evidence, the court concluded that SLS had established that it had standing to file its proof of claim as the party entitled to enforce the note and deed of trust.

On appeal, Debtor persists in her argument that SLS did not have standing to file a proof of claim in her bankruptcy. Her arguments are not easily comprehensible, but they are essentially a rehash of the arguments she presented in the bankruptcy court. Her position is that SLS failed to satisfy the requirements for a proof of claim because it did not produce the original note or an original document showing it had a valid security interest. As such, she argues, SLS committed fraud upon the court. She also contests that the signatures on the note and deed of trust are hers, but this assertion is directly contradicted by her sworn testimony. She also argues that because SLS did not "validate" the debt as requested, it violated the Federal Debt Collection Practices Act, and she had the right

---

[4]That statute provides, "[t]he assignment of a debt secured by mortgage carries with it the security."

11

under the UCC to cease payments on the loan. She also seems to argue that SLS had an obligation under the "lost or stolen documents" provisions of the UCC to post a bond to indemnify her, even though there was no evidence the note was lost or stolen. She also posits that her loan was securitized, which she contends discharged the debt. There is simply no basis in fact or law to support any of these arguments.

Debtor also presents some procedural arguments that are equally groundless. She argues that Ms. Ollier was not a qualified witness because she lacked personal knowledge, did not know who the previous noteholders were or whether Freddie Mac was the "real" holder of the note, nor could she explain how SLS obtained the note. These assertions are contradicted by the record. Ms. Ollier testified that she was personally holding the original note that was indorsed in blank by SunTrust and that the note had been transferred from SunTrust to SLS on May 23, 2017. As for Freddie Mac, Ms. Ollier testified only that she would not try to make a legal conclusion as to who "owns" the note, but that Freddie Mac was the underlying investor. In any event, as the bankruptcy court found, the issue of Freddie Mac's involvement has no bearing on whether SLS is entitled to enforce the note. *See In re Veal*, 450 B.R. at 911 and n.25 (noting that one can be an owner of a note without being a "person entitled to enforce" it, and the converse may also be true). Debtor also contends that the bankruptcy court erred by not requiring SLS to produce the real party in interest or any

12

original documents. Again, this argument is neither accurate nor does it impact any relevant issue. Ms. Ollier produced the original note, by video, as agreed to by the Debtor, and SLS proved it was the real party in interest.

Debtor further argues that the bankruptcy court erred in not ruling on her motion to compel discovery until after the April 11 hearing because further discovery would have provided potentially favorable information showing the SLS debt was invalid. The bankruptcy court denied Debtor's motion to compel based on Debtor's agreement to hear testimony from the SLS representative regarding the documents attached to SLS's proof of claim. The court concluded that the testimony given at the hearing accomplished what was intended by the motion to compel. Debtor did not argue otherwise in the bankruptcy court. Nor has Debtor articulated what documents she sought that would have contradicted the evidence presented by SLS regarding its right to enforce the note and deed of trust.

Debtor also complains of a lack of due process, which seems to be a blanket objection to the entire process, but may also be based on allegations that she was never notified of the assignment of the obligation to SLS, nor did she receive a copy of the proof of claim. Both of these allegations are contradicted by the record. Debtor testified at the April 11 hearing that she had received the notice of transfer to SLS in May 2017, and the certificates of service for SLS's original and amended proofs of claim both indicate that she was served at her home address.

Finally, Debtor alleges that Judge Hursh is prejudiced against her, either because she knows the law or because of her Native American heritage. This issue is not properly before us in this appeal. In any event, nothing in the record supports this allegation. To the contrary, Judge Hursh gave the Debtor extraordinary leeway in prosecuting her claim objection.

In short, Debtor has not shown that the bankruptcy court erred in its legal analysis or factual findings in overruling her objection to SLS's proof of claim.

**B.      The bankruptcy court did not abuse its discretion in granting SLS's motion to modify stay.**

Under § 362(d)(1), on request of a party in interest and after notice and a hearing, the bankruptcy court "shall" grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." The court found cause to grant the motion, given that Debtor had not made any post-petition payments to SLS during the approximately six months her chapter 13 case had been pending, nor had she made any pre-petition payments to SLS after September 2017. Additionally, none of Debtor's proposed chapter 13 plans provided for the debt owed to SLS. The court also noted Debtor's continued insistence that SLS is not the real party in interest, resulting in delay. In sum, the court found that cause existed for granting stay relief

based on Debtor's "frivolous pleadings, delay that increases [SLS's] attorney's fees and costs and otherwise prejudices it, [and] Debtor's failure to make post-petition payments coupled with her pattern of presenting legal theories devoid of any merit to the Court . . . ." Mem. Dec. at 14.

Debtor does not dispute any of the bankruptcy court's factual findings underlying its granting of relief from stay (i.e., her failure to pay or propose a plan that provides for SLS). She instead argues that SLS has no valid interest in these proceedings, i.e., that it lacks standing to seek relief from stay. But "a party has standing to seek relief from the automatic stay if it has a property interest in, or is entitled to enforce or pursue remedies related to, the secured obligation that forms the basis of its motion." *In re Veal*, 450 B.R. at 902. Because stay relief proceedings are essentially procedural and do not finally determine a creditor's debt or security, "a party seeking stay relief need only establish that it has a colorable claim to enforce a right against property of the estate." *Id.* at 914–15 (citations omitted). As discussed above, SLS established that it was entitled to enforce the note and deed of trust, and Debtor has not convinced us otherwise.[5]

---

[5]Shortly before oral argument, Debtor filed a motion to supplement the record with a recently prepared "Chain of Title Analysis & Mortgage Analysis" ("Analysis"). We denied the motion because the Analysis was not before the bankruptcy court when it ruled. Not to be discouraged, at oral argument, Debtor raised a number of contentions, apparently gleaned from the Analysis, that had not been presented previously or were simply inapt, e.g., that the terms of her loan contract with SunTrust prohibited the note from being indorsed in blank and that the securitization of the note

(continued...)

**CONCLUSION**

The bankruptcy court did not err in overruling Debtor's objection to SLS's claim, nor did it abuse its discretion in granting SLS's motion to modify the stay. Accordingly, we AFFIRM.

---

[5](...continued)
resulted in splitting the note from the deed of trust, thus rendering the note unenforceable. We decline to consider these arguments for the same reason we denied the motion to supplement: they are based on evidence that was not before the bankruptcy court.