In re INTERNATIONAL MAN-
AGEMENT ASSOCIATES,
LLC, Debtors.

**William F. Perkins, in his capacity as Plan Trustee for the estate of International Management Associates, LLC, Plaintiff,**

**v.**

**Jessie Champagne and Joyce Champagne, Defendants.**

**Bankruptcy No. 06–62966–pwb.
Adversary No. 08–06223.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

May 23, 2013.

Colin Michael Bernardino, John W. Mills, III, Kilpatrick Townsend & Stockton LLP, Atlanta, GA, for Plaintiff.

Thomas D. Brumbaugh, Champagne & Brumbaugh, Lafayette, LA, for Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

PAUL W. BONAPFEL, Bankruptcy Judge.

The Plaintiff is the Plan Trustee under the confirmed Chapter 11 plan for the substantively consolidated estate of International Management Associates, LLC, and has authority to exercise the rights of a bankruptcy trustee to recover avoidable transfers for the benefit of creditors. The Plan Trustee, proceeding under 11 U.S.C. § 544(b), seeks to recover, as fraudulent transfers under state law, the so-called "fictitious profits" that the Defendants received on their "investments" in a Ponzi scheme in which IMA and its affiliates were engaged.[1]

The Court consolidated this proceeding with others for trial on the issue of wheth-

---

1. The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b). This bankruptcy judge has authority to hear it under 28 U.S.C. § 157(a) by reference from the District Court pursuant to LR 83.7, NDGa. It is a core proceeding under 28 U.S.C. § 157(b)(2)(H), so this court has authority to

er the Debtors in the consolidated cases had operated a "Ponzi" scheme. [Docket No. 29]. At the conclusion of the evidence at the trial on this issue, the Court announced its findings of fact on the record and entered an order confirming its finding that Kirk Wright, the principal of IMA and its affiliates, had operated IMA and its affiliates as a Ponzi scheme during the period from October 1, 1997, through February 17, 2006. [Docket No. 42]. Those findings of fact apply in this proceeding under the consolidation order.

At the trial of remaining issues in this matter, the parties stipulated to the facts concerning the transfers of funds between the Defendants and the Debtors and

agreed that the Court could find the facts on the basis of the record before the Court.

The dispositive issue is whether Georgia or Louisiana law governs the Trustee's claims. The Plan Trustee is entitled to judgment in his favor if Georgia law applies, but his action is time-barred and must be dismissed if Louisiana law applies.

For reasons set forth below, the Court concludes that Georgia law governs this matter and that the Plan Trustee is entitled to judgment in his favor.

## I. Statement of Facts and Contentions of the Parties

The material facts that the Court did not resolve in connection with its determina-

---

determine the matter and enter final judgment under 28 U.S.C. § 157(b)(1).

The Supreme Court's decision in *Stern v. Marshall*, —— U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), raises a question as to whether a bankruptcy court may constitutionally enter a judgment in a fraudulent transfer action. Although the Court in a status conference held on a consolidated basis in this and other similar adversary proceedings noted the existence of the issue and invited parties to raise it, neither the Defendant nor the Plan Trustee have asserted that this Court does not have constitutional authority to enter a final judgment in this proceeding.

The Plan Trustee in his complaint asserted that this adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(F), (H), and (O). (Complaint ¶ 1 [Docket No. 1]). The Defendants did not specifically contest this allegation, stating only that they denied the allegation that the proceeding is a core proceeding under the specified sections "to the extent that the transfers ... were for value and therefore do not satisfy the test of preference, a fraudulent conveyance or any other attempt to alter the debtor-creditor relationship and therefore is not a core proceeding." (Answer ¶ 1 [Docket No. 9] ).

The Defendants' response amounts to no more than a general denial that an avoidable transfer took place. It is not an assertion that the claim does not constitute a core proceeding or that this Court does not have authority

to determine it. Further, the Defendants' answer does not comply with the requirement of Fed. R. Bankr.P. 7012(b) that a defendant state whether it does or does not consent to entry of final orders or judgment by the bankruptcy judge if it asserts that the proceeding is non-core.

Because the Defendants proceeded to trial without raising the issue of this Court's authority to enter a final judgment in their answer or in any pre-trial motion or at trial after the Court specifically noted the issue, the Court concludes that it has authority to enter a final judgment.

In accordance with that conclusion, this Order constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R.Civ.P. 52(a), *applicable under* Fed. R. Bankr.P. 7052. To the extent that the Court does not have constitutional authority to enter a final judgment in this matter, this Order constitutes the Court's proposed findings of fact and conclusions of law, submitted to the District Court for de novo review pursuant to 28 U.S.C. § 157(c)(1) and Fed. R. Bankr.P. 9033.

The Court notes that, in any event, this proceeding does not involve any disputed issues of fact. The District Court reviews this Court's conclusions of law de novo regardless of whether it reviews this Court's action as a result of an appeal from a final judgment, *e.g.*, *In re JLJ, Inc.*, 988 F.2d 1112, 1116 (11th Cir.1993), or as the submission of proposed findings of fact and conclusions of law.

tion that the Debtors were operating a Ponzi scheme at all times material to this proceeding are not in dispute.

The Defendants invested $101,000 between February and October 1999 in what, unbeknownst to them, was a Ponzi scheme. In August 2000, they received a total of $169,600.88 to close out their accounts. The payments represented a return of their $101,000 principal and $68,600.88 in profits.

Because the Court has found that the Debtors were conducting a Ponzi scheme at the time of the investments by and transfers to the Defendants, the profits the Defendants received were actually fictitious in that they were not the result of any legitimate activity. Rather, the source of funds for the transfers was the investments made by other defrauded investors.

■ Transfers made pursuant to a Ponzi scheme are fraudulent transfers that are recoverable under O.C.G.A. § 18–2–22 [2] because the Debtors made them with the actual intent to defraud creditors. The Court has previously determined that the Plan Trustee cannot recover such transfers to the extent that they represent a return of principal if the transferee received the transfers in good faith.[3]

In summary, the facts here are that IMA and its affiliates were operating a Ponzi scheme at all material times, that they made fraudulent transfers to the Defendants, and that $68,600.88 of those transfers represented fictitious profits. It is undisputed that the Defendants received the transfers in good faith. Under Georgia law on these facts, the Defendants have received $68,600.88 in fraudulent transfers, the Plan Trustee in accordance with the confirmed plan may avoid them under 11 U.S.C. § 544(b), and the Plan Trustee is entitled to judgment for the amount of the transfers under 11 U.S.C. § 550(a)(1).

The Defendants, however, contend that Louisiana law governs this proceeding and that the applicable period of limitation under Louisiana law expired before the filing of the Chapter 11 petitions that initiated the Debtors' Chapter 11 cases.[4] The period under Louisiana law expires either one or three years after the date of the transfers. La. Civ.Code § 2041, § 3492. The filing of the Chapter 11 cases occurred on March 16, 2006, well beyond the time when the limitations period expired under Louisiana law, at the latest, in August 2003.

The Defendants advance the following facts in support of their position, which the Plan Trustee does not contest.

**2.** The statute was repealed, effective July 1, 2002. Because the transfers occurred prior to that time, the statute governs them. *Chepstow, Ltd. v. Hunt,* 381 F.3d 1077 (11th Cir. 2004).

**3.** O.C.G.A. § 18–2–78(a) provides a defense to a fraudulent transfer action for a transferee who has received the transfer "in good faith" and "for value." The Court consolidated this and other adversary proceedings for purposes of determining issues relating to this defense. Misc. Proc. No. 09–0601. In that consolidated proceeding, the Court ruled that investors defrauded by IMA's Ponzi scheme have received transfers "for value" to the extent that the transfers represented a return of the in-

vested principal. [Docket No. 19] (Misc. Proc. No. 09–0601 [Docket No. 38]). The Eleventh Circuit affirmed on direct appeal. *Perkins v. Haines,* 661 F.3d 623 (11th Cir. 2011) (copy docketed in Misc. Proc. No. 09–0601, Docket No. 56).

**4.** In its Order entered on April 9, 2010, the Court denied the Defendants' motion for summary judgment based on their contention hat the Georgia statute of limitations bars this proceeding. [Docket No. 23]. The Defendants in their summary judgment motion did not assert that Louisiana law applies and bars the Plan Trustee's claims.

Defendants have at all material times resided in Louisiana. In February 1999, the principal of the Debtors, Kirk Wright, made a presentation in Louisiana that Jessie Champagne attended. The Defendants made an initial investment in Louisiana at that time and made later investments by mail or wire transfer to the headquarters office of the Debtors that was then in Manassas, Virginia.

At the time the Defendants closed their account in August 2000, the headquarters office of the Debtors was in Atlanta, Georgia. They submitted their written request for the funds in their account to that office, and the Debtors mailed checks to them in Louisiana. The checks were drawn on the Debtors' bank in Georgia. The Defendants deposited them in their bank in Louisiana.

The Defendants conclude from these facts that most of the activity surrounding their investments and their receipt of funds from their account occurred in Louisiana. Because most of the contacts between the Defendants and the Debtors occurred in Louisiana, they assert, Louisiana law should govern this matter. In this regard, the Defendants invoke the federal choice of law rule, which generally follows the *Restatement (Second) of Conflict of Laws,* under which the law of the state with the most significant contacts applies. *See, e.g., Alvarez–Machain v. United States,* 331 F.3d 604, 633 (9th Cir.2003); *Medical Mutual of Ohio v. deSoto,* 245 F.3d 561, 570 (6th Cir.2001). The Defendants contend that that state is Louisiana.

The Plan Trustee contends that the choice of law rules of the forum state properly govern the choice of law in this proceeding and that, under Georgia's choice of law rules, Georgia law applies. Alternatively, the Plan Trustee asserts that the most significant contacts with regard to this matter occurred in Georgia such that Georgia law also applies under federal choice of law rules.

The choice of law issue effectively governs the disposition of this proceeding. The Plan Trustee is entitled to judgment against the Defendants if Georgia law applies, but the complaint must be dismissed as untimely if Louisiana law applies.

For reasons set forth below, the Court concludes that Georgia's choice of law rules apply and that under those rules the law of the State of Georgia governs this dispute. Accordingly, the Plan Trustee is entitled to judgment against the Defendants in the amount of $68,600.88, representing the fictitious profits they received.

## II. Use of Federal or State Choice of Law Rules

The analysis of choice of law issues in a bankruptcy court begins with consideration of whether to apply federal or state choice of law rules. In *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the Supreme Court ruled that a federal court in a diversity action must apply the choice of law rules of the forum state. Such a rule, the Court reasoned, followed from its decision in *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), that state law, not federal common law, applies in diversity actions in federal courts.

In *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 163, 67 S.Ct. 237, 91 L.Ed. 162 (1946), however, the Supreme Court ruled that federal common law governs choice of law issues in bankruptcy cases in connection with "how and what claims shall be allowed under equitable principles." *Vanston* is not controlling here because it is distinguishable on its facts. It dealt with issues arising in connection with the allowance of claims in the case, not issues in an action asserting

rights to affirmative relief based on state law.

When a civil action in a bankruptcy case involves questions of state law, courts have taken different approaches as to whether the forum state's law or federal common law governs a choice of law issue. Some courts have ruled that a federal interest in national uniformity in the administration of the bankruptcy laws requires application of federal common law to resolve choice of law disputes in accordance with the *Vanston* principle. *E.g., In re Lindsay,* 59 F.3d 942, 948 (9th Cir.1995); *In re SMEC, Inc.,* 160 B.R. 86, 89–91 (M.D.Tenn.1993).

The opposite view is that, unless a compelling federal interest dictates otherwise, a bankruptcy court should apply the choice of law rules of the state in which it sits. *E.g., Bianco v. Erkins (In re Gaston & Snow),* 243 F.3d 599 (2d Cir.2001); *Amtech Lighting Servs. Co. v. Payless Cashways, Inc. (In re Payless Cashways),* 203 F.3d 1081, 1084 (8th Cir.2000); *In re Merritt Dredging Co.,* 839 F.2d 203, 205–06 (4th Cir.1988).

The latter approach seeks to reconcile the *Klaxon* and *Vanston* cases. It recognizes the importance of the *Erie* principle, applied in *Klaxon,* that a federal court should not apply federal law to questions whose determination is a matter of state law, while also calling for the use of federal principles when an appropriate federal policy requires them in accordance with the *Vanston* ruling. The Fourth Circuit in *Merritt Dredging,* 839 F.2d at 206, called for a "compelling" federal interest to justify application of the federal choice of law rule, while the Second Circuit in *Gaston & Snow,* 243 F.3d at 606, characterized the required level of the federal interest as "significant."

The Eleventh Circuit does not appear to have addressed the issue in a published opinion. Two cases from the Fifth Circuit decided prior to the creation of the Eleventh Circuit, which are binding precedent in the Eleventh Circuit,[5] address the issue, however.

In *Crist v. Crist (In re Crist),* 632 F.2d 1226, 1229 (5th Cir.1980), the court observed, "When disposition of a federal question requires reference to state law, federal courts are not bound by the forum state's choice of law rules, but are free to apply the law considered relevant to the pending controversy."

In the later case of *Woods–Tucker Leasing Corp. v. Hutcheson–Ingram Development Co.,* 642 F.2d 744, 748–49 (5th Cir. 1981), the Fifth Circuit in a bankruptcy dispute requiring the application of state law noted the tension between the *Klaxon* rule requiring application of the forum state's choice of law in a diversity action with the *Vanston* directive to apply federal common law in bankruptcy matters but declined to address the issue because the result was the same under either law. But the court noted, "Even if a federal bankruptcy court is not bound, as a general rule, to apply the forum state's choice of law rules in its resolution of issues of state law, there may nevertheless be issues which should be so resolved." *Id.* at 748 n. 8.

*Crist's* statement that a federal court is "free" to choose the state law it considers relevant to a controversy involving a federal question bears further analysis. Surely such freedom is limited to an exercise of properly guided discretion. Similarly, the observation in *Woods–Tucker* Leasing that there may be some issues that a federal court should resolve in accordance with the

---

5. *Bonner v. Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (Decisions of the Fifth Circuit issued before September 30, 1981, are binding precedent in the Eleventh Circuit).

forum state's choice of law rules necessarily requires a lower court to exercise properly guided discretion to determine whether the issue before it falls into such a category.

■ These two cases stand for the proposition that a bankruptcy court may exercise its discretion to apply a state's choice of law rules in appropriate circumstances in bankruptcy proceedings that involve state law. *See In re New Power,* 313 B.R. 496, 514 n. 4 (Bankr.N.D.Ga.2004). The standard for the exercise of such discretion properly involves a careful consideration of the principles the Supreme Court announced in *Klaxon* and *Vanston.* Proper consideration of those principles results in a standard that calls for the use of the forum state's choice of law rules unless the court identifies an appropriate federal interest that requires the use of federal choice of law rules. Thus read, the two Fifth Circuit cases arguably establish a rule close to, if not the same as, one that calls for the use of the forum state's choice of law rules in the absence of a compelling or significant federal interest.

The Eleventh Circuit in an unpublished opinion appears to have applied this rule, without discussing the issue. In *Mukamal v. Bakes (In re Far & Wide Corp.),* 378 Fed.Appx. 890, 896 (11th Cir.2010) (unpublished), the Eleventh Circuit held that the forum state's choice of law rules apply in bankruptcy proceedings when bankruptcy jurisdiction exists under 28 U.S.C. § 1334 "when the underlying rights and obligations of the parties are defined by state law." Eleventh Circuit Rule 36–2 provides that an unpublished decision does not serve as binding precedent for lower courts. Nevertheless, an unpublished opinion constitutes persuasive authority and is entitled to deference from a lower court in the Eleventh Circuit. *See In re*

*Malone,* 489 B.R. 275 (Bankr.N.D.Ga. 2013).

■ To the extent that a bankruptcy court has discretion to choose whether to apply the forum state's or the federal choice of law rules in a bankruptcy proceeding in which state law determines the rights of the parties, this Court concludes that it can exercise its discretion to apply the federal rule only if it identifies an appropriate federal interest that justifies the use of the federal rule.

Two Supreme Court cases provide compelling support for this conclusion. Indeed, the two cases most likely establish that the rule is not discretionary at all. Rather, a bankruptcy court must apply the forum state's choice of law rules in accordance with the *Klaxon* and *Erie* principles when state law governs the rights of parties in a bankruptcy proceeding unless a federal interest requires use of the federal rule.

In *O'Melveny & Myers v. Federal Deposit Ins. Corp.,* 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), the Federal Deposit Insurance Corporation, in its capacity as receiver for a federally insured bank, argued that federal common law should govern its claims against corporate officers because of a need for uniformity in nationwide litigation and because state law unfavorable to the FDIC's position might deplete the deposit fund and thereby jeopardize federal interests. The Court rejected both arguments, concluding that a need for uniformity did not provide a sufficient basis for the application of federal law and that no federal policy provided that the FDIC should always win. *Id.* at 87–88, 114 S.Ct. 2048.

The *O'Melveny & Myers* Court also rejected the proposition that a federal interest existed by virtue of the FDIC's status as a receiver under federal law. The Court noted that the FDIC was not the

United States and that, even if it were, it would beg the question "to assume that it was asserting its *own* rights rather than, as receiver, the rights of [the failed bank]." *Id.* at 85, 114 S.Ct. 2048. The Supreme Court ruled to the same effect in *Atherton v. Federal Deposit Ins. Corp.,* 519 U.S. 213, 219, 117 S.Ct. 666, 136 L.Ed.2d 656 (1997).

The principles of these two Supreme Court cases involving the FDIC appear to require a conclusion that a bankruptcy court must apply state law in proceedings that state law governs in the absence of some bankruptcy policy interest.

Whether the Court has discretion to choose between the forum state's and federal choice of law rules under binding Eleventh Circuit precedent or must use the forum state's rules in the absence of some level of a federal interest, the Court effectively faces the same question: whether a federal interest justifies use of the federal choice of law rules here.

One view is that important federal bankruptcy policies require the use of a federal choice of law rule in a fraudulent transfer action brought under 11 U.S.C. § 544(b) that asserts state law claims. *E.g., Tow v. Rafizadeh (In re Cyrus II Partnership),* 413 B.R. 609 (Bankr.S.D.Tex.2008); *accord, Goodman v. H.I.G. Capital, LLC (In re Gulf Fleet Holdings, Inc.),* 491 B.R. 747 (Bankr.W.D.La.2013). The court in *Cyrus II Partnership* observed that, although a claim under § 544(b) exists only to the extent of applicable state law, it is nevertheless a federal claim rooted in federal bankruptcy law and policy. *Cyrus II Partnership,* 413 B.R. at 614. Further, the court continued, bankruptcy courts hear such claims as part of their duty to administer and enforce the Bankruptcy Code, which involves bringing about a ratable distribution of assets among creditors and the recovery of fraudulent transfers of property that should be available to creditors. *Id.* (citing *Vanston,* 329 U.S. at 161, 67 S.Ct. 237, and *Palmer & Palmer, P.C. v. U.S. Trustee (In re Hargis),* 887 F.2d 77, 79 (5th Cir.1989)).

As the *Cyrus Partnership II* court notes, application of federal common law in the context of a fraudulent conveyance action under § 544(b), especially in a Ponzi-scheme case, has considerable appeal as a matter of policy. Among other things, application of federal common law would promote consistent treatment of Ponzi participants and could facilitate recovery of funds to produce a ratable distribution of funds to all victims.

Nevertheless, it remains true that a bankruptcy trustee's right to recover under § 544(b) depends wholly on state law. The only thing that § 544(b) establishes is the right of the trustee to enforce state law claims that creditors have. The Bankruptcy Code does not expand the trustee's substantive rights with regard to such claims in the interests of uniformity or of achieving the Bankruptcy Code's objectives of ratable distribution of assets and recovery of fraudulent transfers. The only things that the pendency of the bankruptcy case adds are the existence of bankruptcy jurisdiction over the proceeding to avoid the fraudulent transfer under 28 U.S.C. § 1334, the authority of the bankruptcy trustee to assert the fraudulent transfer claims, and the availability of nationwide service of process under Fed. R. Bankr.P. 7004.

It is significant that Congress in enacting the Bankruptcy Code and related provisions governing bankruptcy jurisdiction and the authority of bankruptcy courts did not add to or detract from the substantive rights of parties with regard to the recovery of transfers that are fraudulent under state law. Other than the fact that § 544(b) authorizes a bankruptcy trustee

to assert rights to avoid transfers under state laws and § 546(a) limits the time within which a trustee may bring such an action, a claim to avoid a fraudulent transfer under state law under § 544(b) does not involve a single issue of federal law.

■ The Court cannot distinguish this bankruptcy situation from the situation of the FDIC receivers in the FDIC cases before the Supreme Court. Under the principles of those cases, the Court concludes that no appropriate federal interest exists in this matter that would justify the use of federal choice of law rules.

The court in *Terry v. June*, 420 F.Supp.2d 493 (W.D.Va.2006), faced this question in a Ponzi-scheme case in which a receiver appointed under the federal securities laws sought to recover fraudulent transfers from participants in a Ponzi scheme that the receivership entity perpetrated. The *Terry* court declined to apply federal common law in the action. After discussion of the Supreme Court's decisions in the FDIC cases, the court summarized its conclusion that is equally applicable to a bankruptcy trustee exercising rights under § 544(b), 420 F.Supp.2d at 499 (citation omitted):

> Although the Court is well aware of the fact that uniform treatment of the Receiver's claims would facilitate recovery of receivership funds and lead to consistent treatment of those investors alleged to have received fraudulent conveyances, these interests are not sufficiently compelling in light of *O'Melveny* and *Atherton.* Nor are the interests at stake in this case federal in character. Like the FDIC in *O'Melveny* and *Atherton,* the Receiver here is not pursuing federal interests *qua* federal interests. Rather, the Receiver in this case is only suing to redress injuries caused to the entity in receivership. Nor does the fact that the Receiver was appointed by a federal

court pursuant to federal laws transform the private interests at stake into interests federal in nature. If that were the case, then the Court's decisions in *O'Melveny* and *Atherton,* which involved the FDIC acting as receiver pursuant to a federal statute, *see* 12 U.S.C. § 1821(d)(2)(A)(1), would hardly make sense.

The *Terry* court then ruled that the case did not present a compelling federal interest that would "justify departure from the rule in *Klaxon....*" *Id.* at 501. The court ruled, "Although the use of federal choice of law rules throughout the Receiver's cases would tend to promote uniformity and predictability in the selection of substantive law and thereby protect receivership funds from added litigation expenses, these interests are neither federal in nature nor sufficiently compelling." *Id.*

The *Terry* court reiterated that an interest in uniformity could not justify a federal choice of law rule under the principles of the FDIC cases. Further, the court concluded that the Receiver's interest in reducing litigation expenses and facilitating recoveries was not federal in character. *Id.* at 501–02. The court stated, "The Receiver, despite being appointed by a federal court and exercising powers defined by federal law, is pursuing the private interests of [the receivership entity] and its defrauded investors rather than the interests of the federal government as a regulator of the U.S. securities market." *Id.* at 502.

The Court agrees with the analysis in *Terry* and concludes that its principles are equally applicable to a state-law claim for the recovery of a fraudulent transfer that a bankruptcy trustee asserts pursuant to § 544(b) of the Bankruptcy Code. To be sure, a bankruptcy trustee operates under a federal statute, but § 544(b) does not

give the trustee any more, or any less, rights than state law provides.

As the *Terry* court observed, "[T]he fact that a federal statutory scheme operates in the background of a case will not justify the application of federal choice of law rules to matters which are creatures of state law." *Id.* at 502. Paraphrasing *Terry, id.*, that being the case, the *Klaxon* rule should apply to the Plan Trustee's claims. They originate exclusively in state law and arise in a proceeding in which no issues of federal law exist.

For all of these reasons, the Court concludes that it is appropriate, and probably mandatory, to apply state law choice of law rules in this proceeding.

### III. Georgia's Choice of Law Rules

The parties have not identified any Georgia cases that deal with choice of law rules in the context of a fraudulent transfer action, and the Court's independent research has not found any.

The initial question in this regard is whether to apply choice of law rules relating to torts or to contracts. Courts have divided on the issue.[6]

▮ In the context of a fraudulent transfer action involving an investor in a Ponzi scheme, the Court concludes that the action is more equivalent to a tort claim than to a contract claim. As this Court has observed in the context of this case, courts determine the rights and liabilities of Ponzi-scheme victims based on the application of principles of fraud and equity; the underlying premise is that a fraud has occurred, and so the contractual terms of a victim's "investment" do not control. Order Denying Trustee's Motion for Partial Summary Judgment (Dec. 1, 2009) [Docket No. 19 at 12] at 12, *aff'd sub nom. Perkins v. Haines*, 661 F.3d 623 (11th Cir.2011) (copy docketed in Misc. Proc. No. 09–0601, Docket No. 56).

More generally, it is significant that a fraudulent transfer action seeks to set aside a transfer notwithstanding its validity as a matter of contract. The noncontractual nature of a fraudulent transfer action makes it closely analogous to a tort, which is "an unlawful violation of a private legal right other than a mere breach of contract, express or implied." O.C.G.A. § 51–1–1. In substance and effect, "[t]he purpose of a fraudulent [transfer] claim ... is to determine whether the debtor's

---

**6.** *Compare, e.g., MC Asset Recovery LLC v. Commerzbank A.G. (In re Mirant Corp.)*, 675 F.3d 530 (5th Cir.2012); *Geron v. Robinson & Cole, LLP*, 476 B.R. 732, 738 (S.D.N.Y.2012); *Terry v. June*, 420 F.Supp.2d 493, 502–03 (W.D.Va.2006) (collecting cases); *Tow v. Rafizadeh (In re Cyrus II Partnership)*, 413 B.R. 609, 613 (Bankr.S.D.Tex.2008) (fraudulent transfer action sounds in tort) *with Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) (fraudulent transfer actions in bankruptcy are "quintessentially suits at common law that more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate...."); *United States v. Neidorf*, 522 F.2d 916, 917–18 (9th Cir.1975) (claim for recovery of fraudulent transfer is "an action not founded upon a tort" for purposes of determining the applica-

ble statute of limitations under 28 U.S.C. § 2415); *Desmond v. Moffie*, 375 F.2d 742, 743 (1st Cir.1967) (fraudulent conveyance claim under Massachusetts Uniform Fraudulent Conveyance Law is not a tort for purposes of choosing appropriate statute of limitations); *Branch v. Federal Deposit Ins. Corp.*, 825 F.Supp. 384, 419–20 (D.Mass.1993) (fraudulent conveyance claim is not a tort claim for purposes of the Federal Tort Claims Act); *Federal Deposit Ins. Corp. v. Martinez Almodovar*, 671 F.Supp. 851, 871 (D.P.R. 1987) (the applicable statute of limitations in fraudulent conveyance action is six-year term for contract actions, rather than a three-year term applicable to actions for money damages founded upon a tort); *Diamond v. Friedman (In re Century City Doctors Hosp., LLC)*, 466 B.R. 1 (Bankr.C.D.Cal.2012) (collecting cases).

actions amounted to a fraud on a creditor, allowing [it] to recover property notwithstanding its transfer. This focus on the improper and fraudulent character of the debtor's conduct and the injury caused to [its] creditors places these claims most appropriately in tort law." *Terry v. June,* 420 F.Supp.2d 493, 503 (W.D.Va.2006).

Because the rights and obligations of the parties in a fraudulent transfer action depend on the operation of noncontractual rules and may result in consequences quite different from those that the parties contracted for, the claim more closely resembles a tort matter than a contractual one. It is appropriate, therefore, to apply the choice of law rules that Georgia uses in tort cases.

■■■■ In tort cases, Georgia's choice of law rule is the rule of *lex loci delicti,* which requires application of the substantive law of the place where the tort or wrong occurred. *E.g., Dowis v. Mud Slingers, Inc.,* 279 Ga. 808, 621 S.E.2d 413 (2005). Georgia follows the general rule that the location of a tort is the place in which the last event necessary to make an actor liable for an alleged tort occurs. *E.g., Risdon Enterprises, Inc. v. Colemill Enterprises, Inc.,* 172 Ga.App. 902, 903–04, 324 S.E.2d 738, 740 (1984).

■■■ The last event on which the liability of the Defendants is premised is the transfer of funds to the Defendants. Under the Uniform Commercial Code applicable in Georgia,[7] the transfer of funds necessarily occurred in Georgia when the drawee bank honored the checks in favor of the Defendants. *See Terry v. June,* 420 F.Supp.2d 493 (W.D.Va.2006).

Because the last act with regard to the Defendants' liability occurred in Georgia, the rule of *lex loci delicti* makes Georgia's law applicable to the Plan Trustee's claims. Under Georgia law, as explained earlier, the Plan Trustee is entitled to judgment against the Defendants in the amount of the fictitious profits they received, $68,600.88.

## IV.  Conclusion

Based on the foregoing findings of fact and conclusions of law, and for reasons set forth above, the Court determines that the Plan Trustee is entitled to judgment against the Defendants in the amount of $68,600.88, together with prejudgment interest at the rate of 1.66 percent[8] from the date of the filing of the complaint, March 14, 2008,[9] to the date of judgment.

The Court will enter a separate judgment in accordance with these findings of fact and conclusions of law.

---

**7.** See O.C.G.A. §§ 11–3–111 (an instrument, which includes a check, is payable at the place stated in the instrument), 11–3–408 (drawee (the bank) is not liable on the instrument until the drawee accepts it).

**8.** This is the interest rate calculated in accordance with 28 U.S.C. § 1961(a).

**9.** The complaint's prayer for relief seeks prejudgment interest "from the date hereof," *i.e.,* the date of the filing of the complaint. (Complaint [Docket No. 1], prayer for relief b, at 6).