IN RE: LYDIA CLADEK, INC., Debtor.

Terry J. Soifer, not individually but as Creditor Agent for the Cladek Creditors Trust, Plaintiff,

v.

Nathan D. Bozarth, Defendant.

Case No. 3:1 0–bk–2805–PMG
Adv. No. 3:12–ap–101–PMG

United States Bankruptcy Court, M.D. Florida Jacksonville Division

July 2, 2013.

---

42. Doc. No. 28–1 at p. 26, 1. 20 p. 27, 1. 4.

43. Doc. No. 28.

44. Doc. Nos. 30, 36 & 39.

Chapter 11
## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

PAUL M. GLENN, United States Bankruptcy Judge

**THIS CASE** came before the Court for hearing to consider the Motion for Summary Judgment filed by the Plaintiff, Terry J. Soifer, not individually but as Creditor Agent of the Cladek Creditors Trust for the bankruptcy estate of Lydia Cladek, Inc.

The Plaintiff commenced this action by filing a Complaint to avoid and recover a number of allegedly fraudulent transfers made by the Debtor, Lydia Cladek, Inc., to the Defendant, Nathan D. Bozarth, beginning in 2003 and ending in 2010.

Pursuant to 11 U.S.C. § 546(a) and Fla. Stat. § 726.110, the "reach back" period for fraudulent transfers under § 544 and Florida law is generally four years prior to the petition date. The Chapter 11 petition in this case was filed in April of 2010. Accordingly, issues of fact exist in this case as to whether all of the transfers identified in the Complaint fall within the applicable limitations period, and how the amount of any recovery by the Plaintiff should be calculated.

Additionally, 11 U.S.C. § 548(c) and Fla. Stat. § 726.109(1) provide transferees with a defense to fraudulent transfer actions based on actual fraud, if the transferees gave value in exchange for the transfers and acted in good faith. In this case, the Defendant filed an Affidavit stating that he had no knowledge of the Debtor's fraud, and that his investments provided reasonably equivalent value for the transfers. Accordingly, issues of fact exist as to whether the Defendant received the trans-

fers for value and in good faith pursuant to the good faith defense provided by § 548(c) and § 726.109(1).

Because there are genuine disputes of material fact in this case, the Plaintiff's Motion for Summary Judgment should be denied.

## Background

The Debtor was engaged in the business of purchasing high interest automobile installment contracts from car dealers at a discounted price, and collecting payments from the borrowers under the contracts. (Complaint, ¶ 15).

The Debtor was operated as a Ponzi scheme. (Main Case, Doc. 530, Order Confirming Plan, ¶ 15)("Upon the evidence presented at the hearing the Court finds and concludes that Lydia Cladek, Inc. was operated as a Ponzi Scheme.").

According to the Debtor's records, "as of January 1, 2003 and during the subsequent period ending on April 1, 2010, Nathan D. Bozarth (the 'Defendant') invested a total of $800,000.00 with the Debtor." (Doc. 37, Exhibit A, Affidavit of Edward W. Buttner, IV, ¶ 4). Specifically, beginning on January 6, 2003, and ending on March 2, 2010, the Defendant made twelve payments to the Debtor in various amounts, for a total sum of $800,000.00. (Complaint, Exhibit A).

Also according to the Debtor's records, "the Debtor transferred funds in the total amount of $839,546.59 held in the Debtor's bank account with Bank of America to or for the benefit of Defendant." (Doc. 37, Exhibit A, Affidavit of Buttner, ¶ 5). The payments from the Debtor were in various amounts on multiple dates between January 27, 2003, and January 25, 2010. (Complaint, Exhibit A).

On April 2, 2010, an involuntary bankruptcy petition was filed against the Debt-or, and on April 5, 2010, the Debtor filed a voluntary Chapter 11 petition.

On February 16, 2011, the Court entered an Order Confirming the Amended Plan of Reorganization Submitted by the Official Committee of Unsecured Creditors, and the Plaintiff was appointed as the Creditor Agent and representative of the estate with the power to enforce the estate's causes of action. (Main Case, Doc. 530).

On January 30, 2012, the Plaintiff filed a Complaint against the Defendant to Avoid and Recover Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544, 548, and 550 and Fla. Stat. §§ 726.105, 726.106, and 726.108. (Doc. 1). The focus of the fraudulent transfer action is found at Paragraph 23 of the Complaint, which alleges:

> [D]uring the course of Defendant's relationship with the Debtor, (i) the Defendant paid a total of $800,000.00 to the Debtor; and (ii) the Defendant received a total of $839,546.59. Therefore, the Debtor made transfers to Defendant totaling $39,546.59 in excess of what the Defendant paid to the Debtor (the "Profit Payments").

(Complaint, ¶ 23). The Plaintiff seeks to avoid and recover the Profit Payments from the Defendant as actually fraudulent transfers under § 548(a)(1)(A) of the Bankruptcy Code and § 726.105(1)(a) of the Florida Statutes, and as constructively fraudulent transfers under § 548(a)(1)(B) of the Bankruptcy Code and § 726.105(1)(b) of the Florida Statutes.

## Discussion

 With respect to actually fraudulent transfers under § 548 and Florida law, a plaintiff must show that (1) the debtor transferred an interest in property, and that (2) the transfer was made with the actual intent to hinder, delay, or defraud creditors. In cases involving Ponzi

schemes, courts typically infer fraudulent intent because such a scheme is fraudulent by definition. "For that reason, 'any acts taken in furtherance of [a] Ponzi scheme . . . are also fraudulent. Every payment made by the debtor to keep the scheme ongoing [is] made with actual intent to hinder, delay, or defraud creditors, primarily the new investors." *In re Pearlman,* 472 B.R. 115, 123–24 (Bankr.M.D.Fla. 2012).

■■■ With respect to constructively fraudulent transfers under § 548 and Florida law, a plaintiff must show that (1) there was a transfer of an interest in the debtor's property within two (or four) years of the petition, (2) the debtor received less than reasonably equivalent value in exchange for the transfer, and (3) the debtor was insolvent on the date that the transfer was made. In cases involving Ponzi schemes, courts typically find that the debtor receives "value" for any transfers up to the amount of the transferee's principal investment, but that a debtor's transfers in excess of the investor's principal investment are not made for value and may be subject to recovery by the trustee. *In re Pearlman,* 472 B.R. at 124–25.

In this case, the Court has found that the Debtor was operated as a Ponzi scheme. (Main Case, Doc. 530, ¶ 15). The Plaintiff alleges in his Complaint that the Defendant received transfers from the Debtor that exceeded the Defendant's advances by the sum of $39,546.59 (the Profit Payments), that the primary source of the Profit Payments was the investment of other investors, and that the Profit Payments were made in furtherance of the Ponzi scheme. (Doc. 37, Exhibit A, Affidavit of Buttner, ¶¶ 13, 14). Accordingly, the Plaintiff seeks to recover the Profit Payments as actually and constructively fraudulent transfers under § 548 and § 550 of the Bankruptcy Code and Florida law.

In the Motion for Summary Judgment currently under consideration, the Plaintiff asserts that he is entitled to a judgment in his favor on the fraudulent transfer claims because "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(a).

In response to the Plaintiff's Motion, the Defendant contends that summary judgment is not appropriate in this case because issues of fact exist regarding (1) the specific transfers that may fall within the applicable limitations period, and (2) the Defendant's good faith in receiving the transfers. (Docs. 41, 42; Transcript, pp. 14–15).

## A. The limitations period

Section 548(a)(1) of the Bankruptcy Code provides that a trustee may avoid any fraudulent transfer of an interest of the debtor in property that was made within two years before the date of the filing of the petition. 11 U.S.C. § 548(a)(1).

Section 726.110 of the Florida Statutes provides that a cause of action with respect to a fraudulent transfer is extinguished unless an action is brought within four years after the transfer was made. Fla. Stat. § 726.110.

■■■ If a fraudulent transfer claim had not been extinguished under Fla. Stat. § 726.110 as of the date that a bankruptcy petition is filed, § 546 of the Bankruptcy Code generally extends the time that a trustee may bring the action. *In re Amelung,* 2010 WL 1417742, at 8 (Bankr. S.D.Fla.2010). Section 546(a) of the Bankruptcy Code provides:

**11 USC § 546. Limitations on avoiding powers**

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title

may not be commenced after the earlier of–

(1) the later of–

 (A) 2 years after the entry of the order for relief; or

 (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

(2) the time the case is closed or dismissed.

11 U.S.C. § 546(a). "Most courts have held that § 546(a) thus allows a trustee two years from the entry of the order for relief within which to file a fraudulent transfer avoidance action under state law pursuant to § 544, so long as the state law statute of limitations has not expired as of the commencement of the bankruptcy case. (Citations omitted). This means *the relevant reach back period begins on the petition date and encompasses all transfers within the four years prior*, per the FUFTA statute of limitations." *In re Pearlman*, 460 B.R. 306, 315 (Bankr.M.D.Fla.2011)(Emphasis supplied).

The combined effect of § 544, § 546(a), and § 726.110 is to allow the Trustee a period of two years after the petition is filed "to bring an action to avoid fraudulent transfers occurring four years prior to the petition date." *In re Amelung*, 2010 WL 1417742, at 8.

■ In this case, an involuntary bankruptcy petition was filed against the Debtor on April 2, 2010, and the Debtor filed a voluntary Chapter 11 petition on April 5, 2010. Under § 726.110 and § 546(a), therefore, the Plaintiff may seek to avoid transfers that occurred within the four-year period prior to April 2, 2010, or between April 2, 2006, and the petition date.

The transfers listed in Exhibit A to the Complaint, however, begin on January 27, 2003, more than three years before the limitations period calculated under the statute.

The Plaintiff asserts that the extended reach-back period asserted in the Complaint benefits the Defendant, because the Defendant's total Profit Payments are reduced if all of his transactions with the Debtor are considered in the aggregate. (Transcript, pp. 18–19). Based on the current record, however, the Court cannot determine whether the transactions prior to April 2, 2006, should be considered in calculating the Defendant's total Profit Payments, or whether the amount of the Profit Payments claimed by the Plaintiff would be different if only the payments after April 2, 2006, are evaluated.

Numerous transactions between the Debtor and the Defendant occurred after April 2, 2006. Between April of 2006 and March 1, 2007, for example, the Defendant made three "deposits" to the Debtor, and received multiple payments each month in amounts ranging from $123.29 to $100,000.00. (Complaint, Exhibit A).

Additionally, the issue is complicated by the Defendant's assertion that his initial investment account with the Debtor was closed on March 1, 2007, and that a new account was established on November 23, 2009. (Doc. 41, Affidavit of the Defendant, ¶ 7). In fact, the Exhibit attached to the Plaintiff's Complaint indicates that no transactions between the Debtor and the Defendant occurred for the two and one-half year period between March 1, 2007, and November 23, 2009, when the Defendant made a "deposit" to the Debtor in the amount of $150,000.00. (Complaint, Exhibit A).

Pursuant to § 546(a) of the Bankruptcy Code and § 726.110 of the Florida Statutes, the "reach back" period for fraudu-

lent transfers under § 544 and Florida law is generally four years prior to the petition date. Based on the record, the Court finds that genuine disputes of material fact exist in this case as to whether all of the transfers identified in the Complaint fall within the applicable limitations period, and how the amount of any recovery by the Plaintiff should be calculated.

## B. The good faith defense

Section 548(c) of the Bankruptcy Code provides that a transferee of a fraudulent transfer "that takes for value and in good faith" may retain any interest transferred to the extent of the value given. 11 U.S.C. § 548(c).

Section 726.109(1) of the Florida Statutes provides that a fraudulent transfer under § 726.105(1)(a) is not voidable "against a person who took in good faith and for a reasonably equivalent value." Fla. Stat. § 726.109(1).

■ "Both of these statutes 'provide an affirmative defense to actual fraud for individuals to whom the debtor's property is transferred, to the extent the individuals provided the debtor value in exchange for the transfers, and if they took the property in good faith.'" *In re Pearlman*, 440 B.R. 900, 905–06 (Bankr.M.D.Fla.2010)(quoting *In re Evergreen Security, Ltd.*, 319 B.R. 245, 254 (Bankr.M.D.Fla.2003)).

■■ The affirmative defense is available to defendants in fraudulent transfer actions involving Ponzi schemes. As indicated above, transfers made in furtherance of a Ponzi scheme are generally "presumed to have been made with the intent to defraud for purposes of recovering the payments" under § 548(a)(1)(A) of the Bankruptcy Code. *In re Pearlman*, 478 B.R. 448, 453 (M.D.Fla.2012)(quoting *Perkins v. Haines*, 661 F.3d 623, 626 (11th Cir.2011)). The good faith defense under § 548(c), however, relates not to the issue of the transferor's fraudulent intent, but to the defendant's good faith. *In re Pearlman*, 478 B.R. at 454. Even if a plaintiff can show that the Ponzi scheme presumption applies, courts must nevertheless assess the good or bad faith of the transferee to determine whether the payments are avoidable. *In re Pearlman*, 440 B.R. 900, 906 (Bankr M.D. Fla.2010). See also *Image Masters, Inc. v. Chase Home Finance*, 489 B.R. 375, 391–92 (E.D.Pa.2013)(The Court evaluated the good faith defense in a fraudulent transfer action involving a Ponzi scheme.).

■ The applicability of the good faith defense is generally a fact-intensive inquiry that is not suitable for determination upon a motion for summary judgment. *In re Pearlman*, 478 B.R. at 454.

Determining whether a transferee has established good faith under Section 548(c) requires a two-part inquiry: the Court must determine whether the "circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose," and if so, whether "a diligent inquiry would have discovered the fraudulent purpose." *Id.* In applying the "reasonable person" standard, the Court must take into account the transferee's individual circumstances, including their sophistication as an investor and whether they had actual knowledge of the fraud.

*In re Vaughan Company, Realtors*, 493 B.R. 597, 610 (Bankr.D.N.Mex.). In other words, a transferee's good faith is a fact-intensive inquiry that should be determined on a case-by-case basis. *In re Vaughan Company, Realtors*, 493 B.R. at 610.

■ In this case, the Defendant filed an Affidavit stating that he had no knowledge of the Debtor's fraud, that he was not aware of the Ponzi scheme, that he be-

**562**

lieved that the Debtor was engaged in a legitimate business operation, and that he gave reasonably equivalent value in exchange for the payments that he received. (Doc. 41). Additionally, for the reasons discussed above, the Court cannot determine whether the Defendant provided value to the Debtor in exchange for the payments, because no determination can be made as to whether all of the transfers identified in the Complaint fall within the applicable limitations period, or how the amount of any Profit Payments to the Defendant should be calculated.

Accordingly, genuine disputes of material fact exist in this case regarding whether the Defendant received the payments for value and in good faith pursuant to the good faith defense provided by § 548(c) of the Bankruptcy Code and § 726.109(1) of the Florida Statutes.

### Conclusion

The Plaintiff commenced this action by filing a Complaint to avoid and recover a number of allegedly fraudulent transfers made by the Debtor to the Defendant beginning in 2003 and ending in 2010.

Pursuant to 11 U.S.C. § 546(a) and Fla. Stat. § 726.110, the "reach back" period for fraudulent transfers under § 544 and Florida law is generally four years prior to the petition date. The Chapter 11 petition in this case was filed in April of 2010. Accordingly, issues of fact exist in this case as to whether all of the transfers identified in the Complaint fall within the applicable limitations period, and how the amount of any recovery by the Plaintiff should be calculated.

Additionally, 11 U.S.C. § 548(c) and Fla. Stat. § 726.109(1) provide transferees with a defense to fraudulent transfer actions based on actual fraud, if the transferees gave value in exchange for the transfers and acted in good faith. In this case, the Defendant filed an Affidavit stating that he

had no knowledge of the Debtor's Ponzi scheme, and that his investments provided reasonably equivalent value for the transfers. Accordingly, issues of fact exist regarding whether the Defendant received the payments for value and in good faith pursuant to the good faith defense provided by § 548(c) and § 726.109(1).

Accordingly:

**IT IS ORDERED** that the Motion for Summary Judgment filed by the Plaintiff, Terry J. Soifer, not individually but as Creditor Agent of the Cladek Creditors Trust for the bankruptcy estate of Lydia Cladek, Inc., is denied.